David G. Lewis, Wyoming Bar No. 4-1150
Attorney at Law
P.O. Box 8519
Jackson, Wyoming 83002
(307) 739-8900
(307) 739-8902 (fax)
davelewis@bresnan.net

Attorney for Plaintiffs

```
                           FILED
                      U.S. DISTRICT COURT
                      DISTRICT OF WYOMING

                      2016 JAN 15  AM 10 53

                      STEPHAN HARRIS, CLERK
                            CHEYENNE
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| FRANCISCO L. HERRERA, and JOANNA HERRERA, CO-WRONGFUL DEATH REPRESENTATIVES, for the exclusive benefit of the beneficiaries of MONICA HERRERA, deceased, who have sustained damages from her wrongfully caused death. ) ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | Case No. 15-cv-128-F |
| GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in their individual capacities as Trustees of the BUCKINGHAM FAMILY TRUST; and, GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM as individual defendants; and, WYOMING MECHANICAL, INC. a Wyoming Corporation; TRIANGLE TUBE/PHASE III CO. INC.., a New Jersey Corporation; and, M&G GROUP DURAVENT, INC., a New York Corporation ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Come now Plaintiffs, by and through their attorney, David G. Lewis, and for their claim for relief against the Defendants, state and allege as follows:

## I.

## INTRODUCTION

On the Friday morning of January 30, 2015, as was usual, Monica Herrera arrived by car at 8935 E. Ditch Creek Road to clean the main residence at that location. The property is an in-holding within the confines of Grand Teton National Park, Teton County, Wyoming. Mrs. Herrera had been the housekeeper for the Buckingham residence (the "Residence") the past seven years. After she arrived and entered the Residence, she gathered the vacuum hose from the attached garage closet, and stepped back into the mud room of the living quarters, where she was overcome by carbon monoxide gas, and fell to the stone floor dead from the poisonous gas that had infiltrated the entire house from a neglected, broken, and detached flue pipe in the garage. No one else was in the Residence at the time.

The Defendants were aware when the system was installed in November, 2014, that there was a water leak in the flue pipe, and that the ventilation system was unstable and likely to come apart and spill uncontrolled amounts of carbon monoxide into the residence. The Defendants with preknowledge chose not to warn Monica Herrera of the danger, but a day or two prior to her deadly exposure, the Defendants Buckingham left a check and note instructing Mrs. Herrera as to chores she was to complete inside the residence on January 30, 2015, the day she was poisoned and killed.

When Mrs. Herrera was found dead in the Residence the night of January 30, 2015, her exposure to carbon monoxide had resulted in a carboxyhemoglobin level of 76% saturation of her blood.

## II.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1332. There is complete diversity of citizenship between the Plaintiffs' decedent, who was a citizen of the State of Idaho, and the Defendants, who are citizens of the States of Wyoming and/or California.

2. The matter in controversy in regard to each defendant exceeds the sum or value of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

3. Venue of this action lies in this judicial district under 28 U.S.C. § 1391(a)(2).

## III.

## PARTIES

4. Plaintiff Francisco L. Herrera is the widower of Monica Herrera. Francisco and Monica Herrera were married to one another for twenty-nine years, and resided together at their home in Teton County, Idaho, when Monica Herrera was killed by poisonous gas in Teton County, Wyoming. Mr. Herrera continues to reside at their home. He is a Co-Wrongful Death Representative in this matter, appointed as such by Order Appointing Decedent's Wrongful Death Co-Representatives, entered by State District Court Judge Timothy C. Day on May 8, 2015, in Civil Action No. 16936. Mr. Herrera is also a participating wrongful death beneficiary.

5. Plaintiff Joanna Herrera is the daughter of Francisco and Monica Herrera, the deceased. She resides in Teton County, Idaho. She is a Co-Wrongful Death Representative in this matter, appointed as such by Order Appointing Decedent's Wrongful Death Co-Representatives, entered by District Court Judge Timothy C. Day

on May 8, 2015, in Civil Action No. 16936. Ms. Herrera is also a participating wrongful death beneficiary.

6. Defendant Gregory Buckingham is a resident of the State of California. He is one of the two Trustees of the Buckingham Family Trust dated September 11, 1990, as amended in its entirety June 23, 2004, of 22 Old Ranch Road, Laguna Niguel, CA 92677. The Buckingham Family Trust holds legal title to the residence in Teton County, Wyoming, wherein Monica Herrera, deceased, was killed by tremendous exposure to poisonous carbon monoxide. Mr. Buckingham was acting in his fiduciary capacity at all times herein mentioned, and he is personally liable to the Plaintiffs for torts committed by him and by his employees and contractors in carrying out the terms of the Trust; and, for liability by virtue of holding title to the Trust.

Mr. Buckingham is also included in this litigation as a party liable to the Plaintiffs for his own legal culpability outside his activities as a Trustee of the Buckingham Family Trust.

7. Defendant Deborah Buckingham is a resident of the State of California. She is one of the two Trustees of the Buckingham Family Trust dated September 11, 1990, as amended in its entirety June 23, 2004, of 22 Old Ranch Road, Laguna Niguel, CA 92677. The Buckingham Family Trust holds legal title to the residence in Teton County, Wyoming, wherein Monica Herrera, deceased, was killed by tremendous exposure to poisonous carbon monoxide. Mrs. Buckingham was acting in her fiduciary capacity at all times herein mentioned, and she is personally liable to the Plaintiffs for torts committed by her and by her employees in carrying out the terms of the Trust; and, for liability by virtue of holding title to the Trust.

Mrs. Buckingham is also included in this litigation as a party liable to the Plaintiffs for her own legal culpability outside her activities as a Trustee of the Buckingham Family Trust.

8.  David Schuler was employed by the Buckinghams as the caretaker of the Residence. He lived in one of the buildings owned by the Trust, and located on the same property as the Residence.

9.  Defendant Wyoming Mechanical Company, Inc., is a Wyoming corporation, conducting plumbing and heating sales and repairs in Teton County, Wyoming.

## IV.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. Plaintiff incorporates by this reference all facts and allegations set forth above, the same as if they were fully asserted herein.

11. On September 11, 1990, the Defendants Gregory and Deborah Buckingham formed the Buckingham Family Trust, as amended in its entirety June 23, 2004, of 22 Old Ranch Road, Laguna Niguel, CA 92677.

12. The sole Trustees of the Buckingham Family Trust are Defendants Gregory Buckingham and Deborah Buckingham, who hold the legal title to the Trust assets; manage the assets; and control the defense of this litigation. They are the real parties in interest to this controversy.

13. Defendants Gregory Buckingham and Deborah Buckingham claim two different residences. One at 22 Old Ranch Road, Laguna Niguel, CA 92677; and, another at 8935 E. Ditch Creek Road, Teton County, Wyoming.

14. Defendant Wyoming Mechanical Company is a Wyoming corporation filed with the Secretary of State of Wyoming on February 17, 1994. Its principal place of business is Teton County, Wyoming.

15. Defendant Wyoming Mechanical provides full service residential and business plumbing and heating services to the residents of Teton County, Wyoming, including the Defendants Buckingham.

16. The Defendants Buckingham purchased the Buckingham Residence on May 15, 2007. The Residence and outlying cabins sit on 8.65 acres of property located just to the east of the Teton Science School on Ditch Creek Road.

17. On or about November 14, 2014, Wyoming Mechanical removed an existing boiler at the Residence that burned propane to heat the fluids that circulate to heat water and the home.

18. On information and belief, the Plaintiffs allege that the removed boiler was subsequently shipped to a forensic engineering firm in Littleton, Colorado, for examination and testing.

19. Wyoming Mechanical then installed a Triangle Tube, Prestige Boiler to replace the removed boiler that was sent to Colorado.

20. The replacement Prestige Boiler was installed on November 14, 2014, by Wyoming Mechanical.

21. For "a couple" of days following the November 14, 2014 installation, Wyoming Mechanical employees claimed they tested the boiler and venting system for safe and proper operation.

22. Wyoming Mechanical supervisor David Gieck told Defendant Gregory Buckingham that there was a water leak in the flue pipe external to the newly installed boiler that needed to be examined.

23. At some point after the November installation, the Defendants Buckingham became aware that the leak in the flue pipe also caused carbon monoxide to leak into their garage and the Residence when the flue was pulled apart.

24. Defendant Gregory Buckingham chose to wait until February 2, 2015 to schedule the maintenance to stop the carbon monoxide leakage from the flue pipe.

25. After the passing of Thanksgiving, Christmas, New Year's Day, and all but two days in the month of January, Defendant Gregory Buckingham telephoned David Gieck on January 28 and on 29, 2015, and told Gieck that there was still a water leak in the flue pipe; and, that the flue was continuing to pull apart.

26. The flue pipe connected to the boiler vent outlet is designed to safely isolate and convey the products of combustion, including carbon monoxide, away from the living space of the house, and into the open air outside.

27. Defendant Gregory Buckingham and Defendant Wyoming Mechanical owner, David Gieck, both acknowledged that maintenance had been needed to repair the continued leakage of water and combustion gases from the flue pipe into the residence. The two men decided on January 29 to postpone any repairs of the known hazardous condition until after the weekend on Monday, February 2.

28. Defendant Gregory Buckingham told David Gieck that the Buckingham property manager, David Schuler, had pushed the two flue pipe ends together on January 29, 2015, and that Schuler would continue to watch the exhaust system for any further detachment of the flue pipe until Defendant Wyoming Mechanical would repair the system on Monday, February 2.

29. Neither Defendant Gregory Buckingham nor his caretaker, Mr. Schuler, chose to warn Mrs. Herrera that the flue pipe from the boiler was detaching and allowing deadly carbon monoxide to be spewing into the garage and Residence.

30. David Gieck, the owner and president of Wyoming Mechanical, and the Defendants Buckingham knew that the boiler venting system that had been installed, tested, and approved for use in the Residence was detaching and spewing carbon monoxide into the Residence.

31. Defendant Wyoming Mechanical knew that the presence of carbon monoxide leaking from an exhaust system it installed in a residence required the company's immediate attention, skill, and remediation in order to protect the inhabitants from personal injury of death.

32. On Friday morning around 10:00 a.m., January 30, 2015, Monica Herrera arrived at the Buckingham residence as usual to clean the interior of the Residence as she had been employed to do.

33. Defendants Buckingham had left Monica Herrera a note on the counter of the Residence directing Mrs. Herrera to perform certain house cleaning tasks on Friday morning, January 30, 2015. The note accompanied a personal check to her dated January 28, 2015, in the amount $125.00 as payment for her cleaning services anticipated for January 30.

34. Defendant Gregory Buckingham and his caretaker, Mr. Schuler, deliberately and knowingly disregarded the fact that Monica Herrera was going into the Buckingham Residence on January 30, 2015 by prior arrangement to clean it, without any knowledge or warning that the exhaust flue had been leaking poisonous gas into the house.

35. Defendant Gregory Buckingham told Mr. Gieck on January 29, 2015 that Mr. Schuler had put the parts of the flue back together, and that Schuler would "keep an eye on it over the weekend."

36.     At approximately 10:00 a.m. on Friday, January 30, 2015, Mr. Schuler noticed that Monica Herrera's vehicle was parked just outside the Buckingham Residence. In spite of the fact that the Defendant Gregory Buckingham had assured that he would have Mr. Schuler watch the damaged and dangerous flue until the system would be repaired the following Monday, Mr. Schuler ignored Mrs. Herrera's peril.

37.     Mr. Schuler made no attempt whatsoever to warn Mrs. Herrera that the boiler flue pipe was disconnecting, allowing the exhaust from the combustion in the boiler, including carbon monoxide, to be spewed out into the garage and throughout the rest of the Buckingham Residence.

38.     Carbon monoxide is an invisible, odorless, tasteless, poisonous gas that if breathed at high levels will lead to death, as occurred to Monica Herrera.

39.     Mr. Schuler knew that Monica Herrera was usually finished cleaning the Residence by 2:00 p.m.

40.     When Mrs. Herrera did not show up at the Jackson Rec Center to meet her husband, Plaintiff Francisco Herrera, according to Mrs. Herrera's custom, Plaintiff Francisco Herrera, telephoned his wife's cell phone around 4:00 p.m., but she did not answer, which was very unusual.

41.     At approximately 6:00 p.m. on January 30, 2015, Mr. Schuler noticed that Mrs. Herrera's car was still parked at the Buckingham Residence. Because Mrs. Herrera typically completed the cleaning of the Buckingham Residence by 1:30 p.m., Mr. Schuler went over to the Residence to determine why Mrs. Herrera had not left the premises hours before.

42.     Mr. Schuler proceeded directly to the garage door, opened it, and sensed that the garage air was very humid. From the moment he opened the garage door he

recognized that the high humidity was being caused by the carbon monoxide spewing from the broken flue.

43. He went directly to the broken flue pipe that had been "giving them problems in the past" and saw once again that the flue pipe had become detached at the elbow just above the boiler, and the carbon monoxide from the boiler flowing out the flue permeated the garage.

44. After he reattached the flue pipe Mr. Schuler walked outside the garage door to breathe fresh air. He then entered the mudroom of the Residence, next to the garage, and saw Mrs. Herrera lying dead on the floor, tangled up in the vacuum cleaner hose she had fetched from the garage. Mr. Schuler proceeded to open doors in the Residence to vent the carbon monoxide.

45. Mr. Schuler telephoned 911 to report the incident to the Teton County Sheriff's Office at 7:40 p.m. Mr. Schuler, aware of the carbon monoxide problem caused by the boiler system relayed to the dispatcher that Mrs. Herrera had likely suffered from carbon monoxide poisoning.

46. At this point, Mrs. Herrera was in a complete state of rigor mortis, a condition that sets in typically within six hours following death.

47. Although the defendants knew that the boiler flue pipe had been disconnecting for three months, and allowing carbon monoxide to flow into the residential air in the Buckingham Residence, the Defendants did not install carbon monoxide alarms that plug into wall outlets, and, which can be purchased at local hardware stores. Nor was Mrs. Herrera provided a verbal or written warning of the potentially life threatening environment she entered to conduct her work.

48. After the Residence had been aired out by the Teton County Fire and Sheriff's departments, the concentration of carbon monoxide gas inside the mudroom

still measured several hundred parts per million, while the room above the garage was "pegging" the meter at 1000 parts per million. According to the Teton County Emergency Medical Services, no one should be in an environment for any length of time with more than 30 parts per million of carbon monoxide.

49. Monica Herrera's carboxyhemoglobin blood saturation at death was 76% according to the Teton County Coroner's autopsy report. Such a saturation level is almost always fatal. The median carboxyhemoglobin saturation of people who die from carbon monoxide poisoning is 53%.

## V.

## FIRST CLAIM FOR RELIEF:

## NEGLIGENCE – DEFENDANTS BUCKINGHAM

50. Plaintiffs incorporate and adopt herein all of the facts and allegations above and below as though fully set forth herein.

51. Monica Herrera was employed by the Defendants Buckingham as a residential housekeeper for the Buckingham Residence working approximately three to four hours one day every other week.

52. As owners and occupiers of the Buckingham Residence, the Defendants Buckingham owed Monica Herrera a non-delegable duty to provide and maintain a reasonably safe place in which to work.

53. As owners and occupiers of the property, and employer of Monica Herrera, the Defendants Buckingham each owed Monica Herrera a duty to exercise reasonable care under all the circumstances.

54. The Defendants Buckingham through their own acts and omissions, as well as those of their employees, managers, and agents, breached and violated their duty of care to Monica Herrera.

55. The existence of the previously known presence of hazardous and poisonous gas (carbon monoxide) at the working premises elevates the degrees of care required by the owner of the work premises, and of the employer of the workers present. As the elevated danger to the employee increases, so too does the required care of the defendants rise proportionately.

56. The acts and omissions constituting such breaches and violations include, but are not limited to, the following;

    a. Failure to exert reasonable care under all of the circumstances;

    b. Failure to provide and/or maintain the premises in a reasonably safe condition for human habitation;

    c. Failure to provide and/or maintain the premises' heating system in a reasonably safe condition and repair;

    d. Failure to perform a reasonable inspection and timely repair of the premises' heating system before allowing Monica Herrera to work on the premises;

    e. Failure to warn Monica Herrera of the unreasonably dangerous condition of the premises as a result of the malfunctioning heating system;

    g. Failure to comply with the installation and safety guidelines of the boiler and system installed on the premises;

    h. Failure to comply with industry safety standards;

    i. Failure to comply with applicable federal, state, and local regulations and laws;

    j. Failure to exercise due and reasonable care in the selection, retention and supervision of contractors who would promptly respond to the inspection and repair of dangerous and deadly conditions found to exist in the newly installed heating system; and

    k. Other acts and omissions constituting negligence.

57. The wrongful acts and omissions of the maintenance and repair that plaintiff has described above and elsewhere in this complaint were negligently, grossly negligently, recklessly, willfully and wantonly accomplished by Defendants Buckingham with preknowledge of the deadly conditions and perils into which they had placed Mrs. Herrera.

58. As a direct and proximate result of the wrongful acts and omissions regarding the installation, maintenance and repair of the boiler system by the Defendants Buckingham, Monica Herrera died. As a result of these wrongful acts and omissions, the Plaintiffs on behalf of her beneficiaries are entitled to recover "Damages," as that term is more specifically described and detailed below.

## VI.
## SECOND CLAIM FOR RELIEF
### NEGLIGENCE – DEFENDANT WYOMING MECHANICAL

59. Plaintiffs incorporate and adopt herein all of the facts and allegations above and below as though fully set forth herein.

60. At all times relevant to this matter Defendant Wyoming Mechanical installed, maintained, and repaired the equipment constituting the boiler system to provide heat to the Buckingham Residence.

61. From shortly after the installation of the Prestige boiler and accompanying venting on or about November 14, 2014, the flue pipe began to leak water and carbon monoxide into the Buckingham garage and Residence, brought on by the flue pipe segments coming apart, allowing deadly poisonous gas (carbon monoxide) to contaminate the fresh air in the garage and Residence.

62. When the flaws in the installation of the heating system were discovered at or shortly after installation, testing, and inspection from November 14 – 16, 2014, Defendants Buckingham, with preknowledge of the perils existing inside the Residence

suggested that the parties wait until after Christmas to correct the dangerous flaws created at installation.

63. With preknowledge of the perils existing inside the Residence, Defendant Wyoming Mechanical agreed to wait; although, it knew that people would be in and out of the Residence with this latent, deadly condition at the residence resulting from negligent installation.

64. Instead, the Defendant Wyoming Mechanical and the Defendants Buckingham mutually agreed to postpone the repair of the leaking water and of the detaching flue segments, until February 2, 2015.

65. On January 30, 2015, Mrs. Herrera was killed in the Buckingham Residence as the proximate result of poison gas spewing out of the negligently installed and constructed flue maintained with preknowledge of the perils involved by Defendant Wyoming Mechanical.

66. Such construction and installation violated the duties of reasonable care.

67. Such violations of the standard of reasonable care were the direct and proximate cause of the damages described and detailed below. The acts and omissions constituting such violations include, but are not limited to, the following:

    a. Failure to exercise reasonable and due care under the circumstances;

    b. Failure to institute and maintain appropriate safety practices and policies;

    c. Failure to exercise reasonable and due care in the installation, inspection, maintenance, and repair of equipment;

    d. Failure to discover, repair, and correct any dangerous conditions, dangerous instrumentality, and latent flaws;

    e. Failure to issue warnings as may reasonably be necessary for the protection of others;

      f.      Failure to perform work and repairs in a workmanlike manner;

      g.      Failure to comply with applicable law, regulations and codes;

      h.      Failure to properly supervise the work while it was being conducted;

      i.      Failure to exercise reasonable care in the planning, design and layout of the equipment, venting, and ducting systems in and around the boiler room; and,

      j.      Failure to properly inspect and test the work when it was completed.

68. The wrongful acts and omissions in the design, installation, construction, and maintenance by defendant, described above and elsewhere in this complaint, were negligently, grossly negligently, recklessly, willfully and wantonly accomplished.

69. As a direct and proximate result of the wrongful acts and omissions in the installation, maintenance and repair of the boiler system by the Defendant Wyoming Mechanical, Monica Herrera died. As a result of these wrongful acts and omissions, the Plaintiffs on behalf of Mrs. Herrera's beneficiaries are entitled to recover "Damages," as that term is more specifically described and detailed in that following section of this complaint.

## VII.

### THIRD CLAIM FOR RELIEF

### STRICT PRODUCTS LIABILITY – DEFENDANTS TRIANGLE TUBE, and WYOMING MECHANICAL

70. Plaintiffs incorporate and adopt herein all of the facts and allegations above and below as though fully set forth herein.

71. Triangle Tube is in the business of manufacturing and selling boilers throughout the United States to distributors such as Wyoming Mechanical, Inc., and, through Wyoming Mechanical, to homeowners such as the Defendants Buckingham.

72. Triangle Tube designed, manufactured, inspected, distributed and sold the boiler that was installed in the Buckingham residence in November, 2014, by Defendant Wyoming Mechanical, Inc.

73. The boiler was defective and in an unreasonably dangerous condition when it was sold and delivered to the Defendant Wyoming Mechanical, and by Wyoming Mechanical which sold and delivered to the Defendants Buckingham in November, 2014.

74. The boiler was intended to reach, and did reach the Buckingham residence without substantial change in the condition in which it was sold.

75. That the defective boiler in the Buckingham residence in Teton County, Wyoming, proximately caused the death of the Plaintiffs' Decedent, Monica Herrera.

## VIII.

## FOURTH CLAIM FOR RELIEF

### STRICT PRODUCTS LIABILITY-DEFENDANT DURAVENT, and, DEFENDANT TRIANGLE TUBE, and DEFENDANT WYOMING MECHANICAL

76. Plaintiffs incorporate and adopt herein all of the facts and allegations above and below as though fully set forth herein.

77. DuraVent is and was in the business of manufacturing and selling venting pipe throughout the United States to distributors such as Wyoming Mechanical, Inc., and, by and through Wyoming Mechanical, to homeowners such as the Defendants Buckingham.

78. DuraVent designed, manufactured, inspected, distributed, and sold the Poly Pro venting system that was installed in the Buckingham residence in November, 2014, by Defendant Wyoming Mechanical, Inc.

79. DuraVent designed, manufactured, inspected, distributed and sold the PolyPro venting pipe to distributors and sellers, including Wyoming Mechanical, Inc., that was ultimately installed in the Buckingham residence in November, 2014, by Defendant Wyoming Mechanical, Inc.

80. The Triangle Tube 175 boiler was distributed and sold by it to Defendant Wyoming Mechanical with the DuraVent PolyPro pipe coming out of the heat exchanger in the boiler. The DuraVent PolyPro venting pipe was, in fact, defective and unreasonably dangerous because of its propensity to come apart when excessive pressure was exerted from the boiler.

81. The PolyPro flue venting pipe herein was defectively designed and in an unreasonably dangerous condition when it was sold and delivered to the Defendant Wyoming Mechanical and to the Defendants Buckingham in November, 2014.

82. The venting pipe was intended to and did reach the Buckingham residence without substantial change in the condition in which it was manufactured by Defendant DuraVent, and ultimately sold by Defendant Wyoming Mechanical to the Defendant Buckinghams.

83. Defendant DuraVent knew that its PolyPro venting flue pipe tended to separate under high pressures from a boiler, as, for example, consequent upon hard fires and delayed ignition explosions defectively produced by the Triangle Tube 175 boiler.

84. That the defective and dangerous venting system, including the flue pipe, proximately caused the death of the Plaintiffs Decedent, Monica Herrera.

## IX.

## Damages

85. Plaintiffs hereby incorporate all statements and allegations in paragraphs 1 through 84, above.

86. As a direct and proximate result of defendants' negligent and wrongful acts and omissions as set forth above, Monica Herrera died. Accordingly, the Co-Wrongful Death Representatives assert the following damages on behalf of the wrongful death beneficiaries of Monica Herrera:

    a. Funeral and burial expenses in an amount to be proven at trial.

    b. Loss of income in an amount to be proven at trial.

    c. Loss of earnings in an amount to be proven at trial.

    d. Pecuniary loss in an amount to be proven at trial.

    e. Hospital and medical expenses in an amount to be proven at trial.

    f. Loss of support maintenance, and contributions in an amount to be proven at trial.

    g. Loss of services in an amount to be proven at trial.

    h. Loss of care, comfort, protection, companionship, association, advice, and society in an amount to be proven at trial.

    i. Negligent infliction of emotional distress to spouse and children, in an amount to be proved at trial.

    j. Loss of hedonic value of Monica Herrera's life in an amount to be proven at trial.

    k. Punitive damages in an amount to be proven at trial.

    l. Exemplary damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray the Court for a Judgment as follows:

1. Judgment against defendants for special damages in an amount consistent with the allegations contained herein and to be proved at trial;

2. Judgment against the defendants for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

3. Judgment against the defendants for punitive and exemplary damages in a fair and reasonable amount to be proved at trial; and,

4. Judgment for costs, interest and such other and further relief as to the Court appears just and equitable herein.

Dated on this 14th day of January, 2016.

David G. Lewis (4-1150)
davelewis@bresnan.net
Attorney for Plaintiffs
P.O. Box 8519
Jackson, Wyoming 83002
(307) 739-8900 / 307-739-8902 (fax)

David G. Lewis
Attorney for Plaintiffs

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand that all of the issues regarding all claims for relief above be tried by a jury.

Dated on this 14th day of January, 2016.

David G. Lewis
Attorney for Plaintiffs
P.O. Box 8519
Jackson, Wyoming 83002
(307) 739-8900 / 307-739-8902 (fax)