Julie Nye Tiedeken
Wyoming Bar #5-1949
McKellar, Tiedeken & Scoggin, LLC.
702 Randall Avenue
P. O. Box 748
Cheyenne, WY  82001
(307) 637-5575
(307) 637-5515
jtiedeken@mtslegal.net
Attorney for Defendant, Wyoming Mechanical Company, Inc

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| FRANCISCO L. HERRERA and JOANNA HERRERA, CO-WRONGFUL DEATH REPRESENTATIVES, for the exclusive benefit of the beneficiaries of MONICA HERRERA, deceased, who have sustained damages for her wrongfully caused death.<br><br>    Plaintiffs,<br><br> v.<br><br>GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in their individual capacities as Trustees of the BUCKINGHAM FAMILYTRUST; And GREGORY BUCKINGHAM and DEBORAH BUCKINGAM as individual defendants; and WYOMING MECHANICAL, INC a Wyoming Corporation; TRIANGLE TUBE/PHASEIII CO. INC., a New Jersey Corporation; and M&G GROUP DURAVENT, INC., a New York Corporation<br><br>    Defendants. | Case No. 15-cv-128-F |

**WYOMING MECHANICAL'S MOTION TO STRIKE THE PROPOSED EXPERT TESTIMONY OF DR. HIRSCHI**

Wyoming Mechanical Company, Inc. moves to strike the expert testimony of Dr. Rick L. Hirschi for the reason that his opinions lack foundation and are inadmissible under Rule 702, Fed.R.Evid. and for the reason that his opinions fail to meet the test established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Counsel for Wyoming

Mechanical certifies pursuant to Rule 7.1 (b)(1)(A) that prior to filing this Motion she orally conferred by telephone with Counsel for the Plaintiff and made a reasonable effort to resolve the dispute.

**Dr. Hirschi's testimony**

Dr. Hirschi, a professor of economics at BYU-Idaho, was designated by Plaintiff to give expert testimony on the economic losses suffered by Plaintiffs as the result of the death of Monica Herrera. (DOC 76)

The first step in Dr. Hirschi's evaluation of economic loss was to make a determination of Mrs. Herrera's income. Dr. Hirschi assumed that Mrs. Herrera had extra income of $5,400 per year in her house cleaning business. This figure was provided to him by Mrs. Herrera's daughter. He did not verify that amount which was not reported on her tax returns. (Hirschi depo. 19:5-10; 23:4-20) Dr. Hirschi used a gross figure and did not deduct any expenses which Mrs. Herrera would have incurred for her cleaning business to come up with a net income figure, including her travel expenses. (Hirschi depo. 32:24-33:16; 35:16-36:9)

As part of his calculation of the economic loss, Dr. Hirschi had to make a determination of the amount that Mrs. Herrera would consume personally because if she consumed a portion of her income, that amount would not have been available to her survivors. If an individual consumed all of their income, the survivors would have no income loss. (Hirschi depo. 137:1-16) Dr. Hirschi did not review any of the Herrera family's actual financial records such as banking statements, credit card statements, family budget or any kind of listing of expenses which would reflect the amount that Mrs. Herrera personally consumed. (Hirschi depo. 137:17-23) Instead, Dr. Hirschi used a national average figure of what someone at her income level would personally consume. (Hirschi depo. 137:24-138:1) Dr. Hirschi admitted that some

individuals may consume at an average rate and others may consume at double the average rate and he does not know whether Mrs. Herrera consumed at an average rate or some other rate. (Hirschi depo. 138:2-11)  The national average assumes that someone at Monica Herrera's income level would put a portion of her income into savings which is part of his economic loss calculation.  The national average would assumes that Mrs. Herrera would save approximately $5,075 per year which works out to approximately $20,000 over a four year period.  Dr. Hirschi does not, however, know how much, if any, Mrs. Herrera actually deposited into savings.  If she had not saved $20,000 in the four years prior to the accident, she would admittedly not meet the average personal consumption statistics that Dr. Hirschi relied upon. (Hirschi depo. 138:12-143:17)  Mrs. Herrera's husband testified during his deposition that they did not have a savings account and that Mrs. Herrera did not deposit funds in a savings account.  (Francisco Herrerra depo. 34:19-22)  Dr. Hirschi does not know how much Mrs. Herrera's car payment was or how much she spent to travel from her home in Idaho to work in Jackson. (Hirschi depo. 144:8-20) He does not know if Mrs. Herrera personally consumed all of her income.   He admitted that may be the case, he just doesn't know because he did not review any information with regard to Mrs. Herrera's actual personal consumption.  (Hirschi depo. 145:7-20)

As part of his calculation of economic loss, Dr. Hirschi calculated an amount for loss of household services.  Again, he did not use any real data.  He did not ask Mr. Herrera, for example, how much time his wife spent on household duties such as he described in his calculation. (Hirschi depo.  145:21-146:1) One of the numbers he utilized was 4.1 hours per day but he doesn't know if she actually spent 4.1 hours performing household services.  He couldn't say if she spent 1 hour or 6 hours.  He doesn't know. (Hirschi depo. 145:21-146:9)  He agrees that someone like Mrs. Herrera, who was working two jobs outside the home and had a commute

to work ,might spend less time on household services than individuals who don't work outside the home.  Dr. Hirschi does not know if Mrs. Herrera fit into the average or was nowhere near the average.  (Hirschi depo.  146:10-147:18)

**Discussion**

The Wyoming Supreme Court expressly adopted the analysis provided by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), and its progeny, as guidance for this Court's determination of whether to admit expert testimony. *Bunting v. Jamieson*, 984 P.2d 467 (Wyo. 1999).

According to *Daubert*, the trial judge must act as a "gatekeeper" to determine at the outset whether an expert will testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 592.  In order to do this, a two-pronged test is used to determine whether the expert testimony is properly admissible.

Under the first prong, the district court must determine whether the reasoning or methodology underlying the testimony is scientifically valid.  To do this, the Court refers to a non-exclusive list of four criteria.  The Court must consider whether the theory or technique has been tested, whether the theory or technique has been subject to peer review and publication, the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation, and the degree of acceptance within the relevant scientific community. *Daubert,* 509 U.S. at 592-594.

Later courts have refined the "gatekeeping" role of the trial judge by considering additional factors like the extensive experience and expertise of the expert, whether the expert is proposing to testify about matters growing out of research he has conducted independently of litigation, and the non-judicial uses to which the method has been put. *Bunting* at 7.

In the second prong of the *Daubert* analysis, the trial court must determine whether the testimony "fits" the disputed issues of fact.  The goal of *Daubert's* "gatekeeping" function is "to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing his testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999).  Nevertheless, it is also true that the court now plays a role as gatekeeper to exclude unreliable testimony and since *Kumho Tire*, it is clear that such a function also applies to all expert testimony, not just testimony based in science.  *Id*. The proponent of expert testimony bears the burden of demonstrating the expert's qualification. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

Fed.R.Evid. 702 requires an expert's testimony to be "based upon sufficient facts or data" and to be "the product of reliable principles and methods" which have been "applied . . . reliably to the facts of the case." "Under Daubert, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) (ellipsis and internal quotation marks omitted). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Mooring Capital Fund, LLC v Knight*, 388 Fed. Appx. 814, 820 (Cir. 2010).

Dr. Hirschi's economic analysis falls far short of the requirement that his testimony must be "based on sufficient fact and data". His opinions clearly are not "the product of reliable principles and methods" which have been "applied . . . reliably to the facts of the case."  The first step of Dr. Hirschi's analysis was to make a determination of Mrs. Herrera's income.  He accepted a gross income figure without any verification and did not take into account the expenses Mrs. Herrera would have incurred in her business, the most obvious being the cost to travel from her home in Idaho to clean the Buckingham's home and other homes in Wyoming. The second step of Dr. Hirschi's analysis was to determine the amount of Mrs. Herrera's consumption because if she personally consumed all of her income, Plaintiffs would have no economic loss. If the consumption figure is underestimated, then the economic loss is inflated. Determining the amount of Mrs. Herrera's personal consumption is a key step in Dr. Hirschi's economic loss analysis.  If the consumption figure is not based on accurate facts and data, the calculation is not reliable. Dr. Hirschi admits that he looked at no actual data which would give him any information about Mrs. Herrera's personal consumption.  He admittedly does not know if his calculation of personal consumption using national average figures bears any relationship to Mrs. Herrera's actual personal consumption.  The statistic on savings accounts is an example of the unreliability of using a national average analysis.  The statistics assume that Mrs. Herrera would have saved $20,000 in the four years before her death and Dr. Hirschi assumes an approximately $5,000 per year loss of savings as part of his economic loss analysis.  There is no evidence that Mrs. Herrera saved any amount. Her husband testified that she did not have a savings account and did not deposit funds in a savings account.

Dr. Hirshi's analysis is unreliable, is not based on sufficient fact and data, and should be stricken.

**Conclusion**

For the reasons set forth above, Dr. Hirschi's expert testimony should be stricken.

**DATED** this 30th day of August, 2016.

By: */s/ Julie Nye Tiedeken*
Julie Nye Tiedeken
Wyoming Bar #5-1949
McKellar, Tiedeken & Scoggin, LLC
P.O. Box 748
Cheyenne, WY  82003-0748
(307) 637-5575
jtiedeken@mtslegal.net

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 30th day of August, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Lewis
P.O. Box 8519
Jackson, WY 83002
davelewis@bresnan.net

Katherine Mead
P.O. Box 1809
Jackson, WY 83001
kate@meadlaw.net

Christopher R. Reeves
Dick Waltz, Esq.
Waltz/Reeves
1660 Lincoln Street, Suite 2510
Denver, CO 8800
creeves@waltzreeves.com
dwaltz@waltzreeves.com

Cameron S. Walker
Judith A. Studer
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, WY 82601
cam@schwartzbon.com
jstuder@schwartzbon.com

Joseph P. McGill
Jennifer A. Cupples
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152
JMcGill@fbmjlaw.com
jcupples@fbmjlaw.com

                          By:  */s/ Julie Nye Tiedeken*
                              McKellar, Tiedeken & Scoggin, LLC