Julie Nye Tiedeken
Wyoming Bar #5-1949
McKellar, Tiedeken & Scoggin, LLC.
702 Randall Avenue
P. O. Box 748
Cheyenne, WY  82001
(307) 637-5575
(307) 637-5515
jtiedeken@mtslegal.net
Attorney for Defendant, Wyoming Mechanical Company, Inc

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| FRANCISCO L. HERRERA and JOANNA HERRERA, CO-WRONGFUL DEATH REPRESENTATIVES, for the exclusive benefit of the beneficiaries of MONICA HERRERA, deceased, who have sustained damages for her wrongfully caused death. | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15-cv-128-F |
| GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in their individual capacities as Trustees of the BUCKINGHAM FAMILYTRUST; And GREGORY BUCKINGHAM and DEBORAH BUCKINGAM as individual defendants; and WYOMING MECHANICAL, INC a Wyoming Corporation; TRIANGLE TUBE/PHASEIII CO. INC., a New Jersey Corporation; and M&G GROUP DURAVENT, INC., a New York Corporation | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF WYOMING MECHANICAL'S MOTION FOR SUMMARY JUDGMENT ON BUCKINGHAM'S CROSS CLAIM**

**COMES NOW** Wyoming Mechanical Systems Company, Inc. ("Wyoming Mechanical"), by and through its attorney, Julie Nye Tiedeken, McKellar, Tiedeken, & Scoggin LLC and submits the following Memorandum of Law in support of its Motion for Summary Judgment on the Cross Claim filed against it by Gregory Buckingham and Deborah Buckingham,

in their individual capacities as Trustees of the Buckingham Family Trust and Gregory Buckingham and Deborah Buckingham, individually (collectively referred to as "Buckinghams")

**Procedural History**

The Court previously considered Wyoming Mechanical's Motion to Dismiss the Cross Claim of the Buckinghams and entered its Order on October 15, 2015 Denying the Motion to Dismiss. The Court's Order states that "The Buckinghams have pled facts alleging that Wyoming Mechanical has an independent legal duty to indemnify by virtue of the parties' agreement to install the boiler and the subsequent installation of the boiler, therefore, it will be necessary for the Court review the parties' agreement to determine the nature of that relationship".

**Contractual Relationship**

Greg Buckingham called Steve Gieck and told him that he wanted to replace his current boiler and asked him how much it would cost. Steve Gieck worked up a rough estimate of the cost for Mr. Buckingham. The written estimate was not provided to Mr. Buckingham. (S. Gieck Deposition 45:17 -46:16) There was no written proposal for installation of the boiler which was installed in November of 2014. (D. Gieck 11/19/15 depo. 51:7-20) After the boiler was installed, Wyoming Mechanical sent a bill to the Buckinghams which was paid. (Buckingham 11/18/15 depo. 38:25-40:1, Deposition Exhibit 7) There is a warranty on the boiler from the manufacturer of the boiler, Triangle Tube. (D. Gieck 11/19/15 depo. 41:5-10)

**Facts**

After the boiler was installed, it was discovered that there was a leak in the garage slab in the Buckingham's garage and a repair of the leak and replacement of glycol in the system was scheduled by the Buckinghams for Monday, February 2, 2015. The appointment was set up in

late December for a time that was after the holidays and when the Buckinghams would not be in town. (D. Gieck 11/19/15 depo. 38:4-25) On Wednesday, January 28th, Mr. Buckingham left the following voice mail for David Gieck:

> "David, Greg Buckingham, 733-7436. Leaving town in the morning, so if you get a chance to call me this afternoon, that would be great. I want to chat with you about coming out here Monday. I know you have it on your schedule already and who you are bringing, so you don't waste your time. It sounds like a car that's hitting the wall, it's getting so loud when it bangs. And you may need to bring out the guy that sold you the boiler is what I'm thinking, but you definitely need two people. Okay, thanks. Bye." (D. Gieck 11/19/15 depo. 36:5-37:15)

David Gieck returned Mr. Buckingham's call on Thursday morning, January 29, 2015. Mr. Buckingham told Mr. Gieck that he was leaving town shortly and confirmed that Wyoming Mechanical was coming out Monday (February 2). He told David Gieck that nobody was going to be around and that nobody would be in the home. He was told that the vent to the boiler had come apart but that they had put it back together, and that Dave Schuler would be on site paying attention to the boiler. (D. Gieck 11/19/15 depo. 39:1-14; 50:4-18) David Gieck did not send someone out immediately to repair the boiler because Mr. Buckingham told him the boiler flue was together, that the Buckingham's were leaving town, and that no one would be around. (D. Gieck 11/19/15 depo. 62:6-63:6) Dave Schuler was employed by the Buckinghams as a caretaker. In exchange for providing caretaking services, the Buckinghams provided him with a free place to live for himself and his wife and also paid the utilities associated with his home. (Schuler 11/18/15 depo. 69:22-72:14) Mr. Buckingham told him on January 27 or 28, 2015 that the flue pipe for the boiler had come apart and asked him to look at it and check it out. (Schuler 4/27/16 depo. 52:12-21; 56:21-57:4) Mr. Schuler was aware that the boiler has an exhaust pipe and that the exhaust from a boiler contains carbon monoxide. He was also aware that if a boiler

vent pipe came apart, exhaust would be discharging into the garage and it was a dangerous situation. (Shuler 11/18/15 depo. 82:22-83:15)  On January 27, 2015 Mr. Buckingham sent Mr. Schuler an email advising him that Monica Herrera would be in the main house on Friday (January 30, 2015).  (Schuler 4/27/16 depo.  58:19-24)   On January 29, 2015, Thursday evening, he went over to the Buckingham house to perform some little repairs around the house.  After he performed the repairs, he checked on the boiler vent system because Mr. Buckingham had asked him to keep an eye on it because it had pulled apart. (Schuler  5/3/15 depo. 11:6-19)  When he checked on it that Thursday evening, the venting system was together and was not pulled apart.  (Schuler 5/3/15  depo. 11:20-23)  However, he found the connector ring for the vent joint on top of the refrigerator so he pulled the vent apart and put the ring into place and put the vent back together.  (Schuler 5/3/15  depo. 11:20- 12:5)    The next morning, Mr. Schuler saw Monica Herrera's car outside the Buckingham home at around ten o'clock in the morning.  He knew that she accessed the Buckingham's home through the garage but was not worried about the vent coming apart again and didn't check on it.  (Schuler 11/18/15 depo. 94:9-95:17; Schuler 4/27/16 depo. 169:12-170:13)   At around 6:00 in the evening, he noticed that Mrs. Herrera's car was still at the Buckingham residence and he went into the Buckingham's garage and found that the vent pipe had come apart.  He put it back together and then went into the home and found Mrs. Herrera on the floor.   (Schuler 11/18/15 depo. 45:15-49:4)  It was later determined that Mrs. Herrera had died as a result of carbon monoxide exposure.

**Discussion**

Plaintiffs have filed suit against Wyoming Mechanical and the Buckinghams and have alleged that they were negligent and a proximate cause of the death of Monica Herrera.  The

allegations against the Buckinghams include, but are not limited to, an allegation that they are liable for the negligence of their employee and property manager, David Shuler. Plaintiffs allege that the Buckinghams became aware that they had a carbon monoxide leak from their boiler flue pipe in their garage which had become detached and that they failed to timely schedule maintenance of the boiler. They allege that the Buckinghams told David Gieck, who is employed by Wyoming Mechanical, that their property manager, David Schuler, would watch the system for any further detachment of the flue pipe until the system could be repaired. Plaintiffs allege that the Buckinghams and Shuler failed to warn Herrera of the dangerous condition in the Buckinghams' residence. The Complaint also alleges that the Buckinghams and their employees were negligent for failing to maintain their premises in a safe condition and failing to warn Herrera of the dangerous condition of the premises. Significantly, the allegations against the Buckinghams are based on allegations that the Buckinghams, themselves, and their employees were negligent and a cause of Monica Herrera's death. The Buckinghams filed a Cross Claim against Wyoming Mechanical seeking indemnity for the claims of the Plaintiff.

In 1986, the Wyoming legislature repealed Wyoming's contribution statute, W.S. § 1-1-110, when it adopted comparative negligence principles for recovery against joint tortfeasors.

After the adoption of the 1986 statute, the Wyoming Supreme Court considered in *Schnieder National, Inc. v Holland Hitch Co*., 843 P.2d 561, 574 (Wyo. 1992), whether causes of action for implied indemnity survived the adoption of the comparative fault statute. The indemnity claims being considered by the court in *Schnieder* included claims based on strict liability and breach of express and implied warranties. The court held that the comparative fault statue in effect at that time only applied to actions in which a plaintiff was seeking recovery for "negligence". As a result, the jury would not be assessing percentages of fault for the alleged

strict liability and/or breach of warranty claims being asserted against the third party defendant. It was in this context in which the court adopted a partial form of implied equitable indemnity which would allow comparison of the fault between a third party plaintiff who had been found to be negligent and a third party defendant who was being sued on a claim of implied indemnity for actions based on strict liability and breach of warranty. This was the only way, under the law in effect at that time, that there could be a comparison of the fault of all actors. The court stated that it was striving for fairness and it came up with a mechanism, through implied equitable indemnity, in which there could be a comparison of fault of all actors. The *Schneider* Court stated that it adopted the views of the Restatement. The Restatement provision in effect at that time was the Restatement of Torts (Second) §886B (1979).

      After *Schneider* was decided, and presumably in response to the *Schneider* decision, the Wyoming legislature amended Wyoming's comparative fault statute in 1994 to its present form which includes a definition of fault which requires the comparison of the fault of actors who are strictly liable in tort and actors who are liable on a theory of breach of warranty along with actors who are allegedly negligent. The current statute contains the following definition of fault:

> "Fault" includes acts or omissions, determined to be a proximate cause of death or injury to person or property that are in any measure negligent, or that subject an actor to strict tort or strict products liability, and includes breach of warranty, assumption of risk and misuse or alteration of a product

Additionally, after *Schneider* was decided, the Restatement of Torts (Second) § 886B was replaced by the Restatement of Torts (Third): Apportionment of Liability § 22 which was adopted in 2000 and which provides as follows:

> § 22. Indemnity
>
> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole

>or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:
>
>(1) the indemnitor has agreed by contract to indemnify the indemnitee, or
>
>(2) the indemnitee
>
>(i) was not liable except vicariously for the tort of the indemnitor, or
>
>(ii) was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.
>
>(b) A person who is otherwise entitled to recover indemnity pursuant to contract may do so even if the party against whom indemnity is sought would not be liable to the plaintiff.

Under § 22, the enumerated circumstances under which a person is entitled to indemnity are limited to situations where a person agreed by contract to indemnify and situations where a person has been found vicariously liable for the negligence of another or was not liable except as the seller of a product (by operation of law). None of these enumerated circumstances apply to the relationship between the Buckinghams and Wyoming Mechanical. There was no written contract or implied contract between the Buckinghams and Wyoming Mechanical which provided that Wyoming Mechanical would indemnify the Buckinghams from liability for their own negligence. The claims against the Buckinghams are not based on a theory that they are vicarious liable for the actions of Wyoming Mechanical or that they are liable by operation of law for Wyoming Mechanical's actions. The Plaintiff's claims against the Buckinghams are based on their own alleged negligence and/or the negligence of their employee, David Schuler.

The Restatement of Torts (Third): Apportionment of Liability § 22 eliminated provisions which allowed a negligent party to obtain indemnity. *Comment e. Culpability of the indemnitee*

to § 22 discusses the reasoning for why §22 eliminates the ability of a negligent party to obtain indemnity which was allowed in the Restatement of Torts (Second) § 886B subsections (d) and (e) explaining that "[T]hese doctrines were developed before comparative responsibility. They avoided the harsh effect of pro rata contribution when one of the tortfeasors was substantially more culpable than the other. **They are inconsistent with the goals of comparative responsibility.**" (Emphasis Supplied)

The Wyoming Supreme Court has not considered in what circumstances an equitable indemnity claim is still viable after the adoption of the new comparative fault statute and after adoption of the Restatement of Torts (Third): Apportionment of Liability § 22. The Tenth Circuit reiterated the procedure for ruling on issues where the law of the state is unsettled in *Cornhusker Casualty Company v Skaj*, 786 F.3d 842, 852 (10th Cir. 2015). The court

> "must . . . attempt to predict how [Wyoming's] highest court would interpret [the issue]." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013); see *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) (" Because Wyoming has not directly addressed this issue, this court must make an Erie guess as to how the Wyoming Supreme Court would rule." ). We may " consider all resources available" in doing so, " including decisions of [Wyoming] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *In re Dittmar,* 618 F.3d 1199, 1204 (10th Cir. 2010).

The 10th Circuit Court of Appeals recognized that §886B has been replaced by the Restatement (Third) of Torts: Apportionment of Liability §22 (2000) in *United States Brass Corporation v Dormont Manufacturing Company,* 06-1197 (2007). The Court in *Dormont* also pointed out that in order to recover on an indemnity claim, both §886B and §22 provide that the party seeking indemnity is required to have discharged the liability of the indemnitor in

order to recover on a claim of indemnity. The court cited Restatement (Second) of Torts § 886B (1) which provided:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses …

And

§22 cmt. b. which provides:

> "[e]xcept when a contract for indemnity provides otherwise . . . an indemnitee must extinguish the liability of the indemnitor to collect indemnity. The indemnitee may do so either y a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor from liability."

Also see *C & E Services*, 498 F.Supp. 2d 242 (D.D.C. 2007) at 267 "a prerequisite for a claim for equitable indemnification 'is that the party seeking it (indemnitee) have discharged the liability for the party against whom it is sought' quoting *Dist. Of Columbia v. Washington Hosp. Ctr.*, 722 A. 2d 332, 2 341 (D.C. 1998); *Gray v Leisure Life Industries*, 77 A. 3d 1117, 1121 (N.H. 2013) in which the court stated that "unless otherwise provided by contract, in order to seek indemnit y, " an indemnitee must extinguish the liability of the indemnitor ... either b y a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or b y satisfaction of judgment that by operation of law discharges the indemnitor from liability." citing Restatement (Third) of Torts: Apportionment of Liability § 22 comment b at 272.

The Buckinghams have not alleged that they have extinguished Wyoming Mechanical's liability to Plaintiffs or that they intend to pay any Judgment which may be entered against

Wyoming Mechanical. As a result, the Buckinghams do not have a claim for indemnity (under either version of the Restatement) because Wyoming Mechanical remains liable to the Plaintiffs for any fault which is assessed to it by the jury.

The procedure set forth by the Schneider court is not a viable or necessary method of determining fault under the new comparative fault statute. The Buckinghams' arguments and evidence in support of their arguments that they were not negligent will all be considered by the jury when making its' determination of whether they were negligent and a proximate cause of injury to the Plaintiffs. More importantly, their arguments will also be considered by the jury in making their determination of whether Wyoming Mechanical was negligent and a proximate cause of injury to the Plaintiffs. The jury will then determine the respective fault of the parties who will then be liable for only their own percentage of fault.

An analogous fact situation to the facts in this case was considered by the Alaska Supreme Court in *AVCP Regional Housing Authority v. R. A. Vranckaert Co., Inc.*, 47 P.3d 650 (Alaska 2002). A group of tenants sued their landlord, AVCP, for injuries caused by exposure to carbon monoxide from stoves in their homes and also sued the contractor, Vranckaert, who had installed the stoves. AVCP asserted indemnity claims against Vranckaert. After AVCP settled with the Plaintiff, it sought to recover the amount of its' settlement from Vranckaert. The court stated at p. 657:

> In Vertecs Corp. v. Reichhold Chemicals, a case that predates the current several liability statute, we held that Alaska does not recognize a cause of action for implied indemnity between concurrently negligent tortfeasors. We rejected Vertecs's argument that "the common law would allow indemnity in any situation wherein one tortfeasor's conduct was not as blameworthy as another's and it would be just and fair as between the parties that the entire loss fall upon the indemnitor." We determined that adoption of Vertecs's position would impose on courts the difficult task of determining what cases justify

implied indemnity among concurrently negligent tortfeasors, would undermine the modern tort law goal of having each tortfeasor pay for the damages attributable to its own tortious acts, would discourage settlement, and would be judicially inefficient. The same public policy considerations dictate our conclusion that AVCP may not recover on a theor y of implied contractual indemnit y from Vranckaert; the plaintiffs had fault-based claims pending against AVCP, and AVCP's settlement was to resolve a dispute about its own negligence rather than to extinguish Vranckaert's liability. Section 22 of the Restatement (Third) of Torts: Apportionment of Liability (1999) supports our conclusion. It requires the indemnitee to extinguish the liability of the indemnitor, by settlement or judgment, to collect indemnity. Section 22 provides:

I.    the indemnitor has agreed by contract to indemnify the indemnitee, or
II.   the indemnitee

A.    was not liable except vicariously for the tort of the

indemnitor or

B.    was not liable except as a seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.

Comment b to section 22 explains:

*[A]n indemnitee must extinguish the liability of the indemnitor to collect indemnity.* The indemnitee may do so either by a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor from liability.

(Emphasis added)

The theory behind these provisions is that the indemnitee has provided a benefit to the indemnitor by fully discharging the indemnitor's liability, making restitution appropriate. Such a benefit is conferred only if the indemnitee guarantees that the indemnitor is protected from further claims b y the plaintiffs that the indemnitor is liable. **To hold that a party must indemnify another while the party is still liable to the plaintiffs would lead to the unjust result that the indemnitor could face double liability.** It would also eliminate any incentive for parties to settle since settlement would not limit the indemnitor's

> exposure.  **The Restatement (Third) of Torts: Apportionment of Liability § 22 and Comment b are consistent with AS 09.17.080, which provides for the apportionment of a damages award against a party according to the factfinder's allocation of that party's fault.**  (Emphasis Supplied)
>
> We conclude that AVCP's implied contractual indemnity claim must fail under our reasoning in Vertecs and under the Restatement (Third) of Torts § 22. To recover damages from Vranckaert on an implied contractual indemnity theory, AVCP must not itself have been liable, except vicariously, to the plaintiffs and must have obtained from the plaintiffs a release of liability for all direct claims that the plaintiffs had against Vranckaert.

Wyoming, like Alaska, now has a statute which provides for the apportionment of damages according to the fact finder's allocation of that party's fault.  It would be unfair to allow the Buckinghams to recover indemnity from Wyoming Mechanical while it is still liable to the Plaintiffs for damages.

See *McCarthy v. Turner Const., Inc.*, 953 N.E.2d 794, 800 (N. Y. 2011) in which the Court held that a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without any proof of negligence; *Rodriguez v. United Public Workers, AFSCME Local 646, AFL-CIO*, 031314 HIICA, 30286 (2014)  in which the court recognized that common-law indemnification is generally only available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer citing Restatement (Third) of Torts; Apportionment of Liability §22 (a) (2) (i) (2000);  and *The City of Wilkes-Barre v. Kaminski Brothers, Inc.*  804 A.2d 89 (Pa. 2002) in which the court stated that "common law indemnity is not a fault- sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant.  It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss."

The general weight and clear trend of authority supports a conclusion that the Wyoming Supreme Court would adopt The Restatement (Third) of Torts: Apportionment of Liability §22 requirements for equitable indemnity claims. The Buckinghams do not meet the requirements of §22 because the claims against them are not based on vicarious liability and because the y have not and don't intend to discharge the liability of Wyoming Mechanical.

**Conclusion**

Wyoming Mechanical's Motion for Summary Judgment on the Buckingham's Cross Claim should be granted.

**DATED** this 30th day of August, 2016.

By: */s/ Julie Nye Tiedeken*
Julie Nye Tiedeken
Wyoming Bar #5-1949
McKellar, Tiedeken & Scoggin, LLC
P.O. Box 748
Cheyenne, WY  82003-0748
(307) 637-5575
jtiedeken@mtslegal.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

David Lewis
P.O. Box 8519
Jackson, WY 83002
davelewis@bresnan.net

Katherine Mead
P.O. Box 1809
Jackson, WY 83001
kate@meadlaw.net

Christopher R. Reeves
Dick Waltz, Esq.
Waltz/Reeves
1660 Lincoln Street, Suite 2510
Denver, CO 8800
creeves@waltzreeves.com
dwaltz@waltzreeves.com

Cameron S. Walker
Judith A. Studer
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, WY 82601
cam@schwartzbon.com
jstuder@schwartzbon.com

Joseph P. McGill
Jennifer A. Cupples
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI 48152
JMcGill@fbmjlaw.com
jcupples@fbmjlaw.com

By:  */s/ Julie Nye Tiedeken*
McKellar, Tiedeken & Scoggin, LLC