Christopher R. Reeves-Wyoming Bar No. 7-5386
Richard A. Waltz, *Pro Hac Vice*
Waltz / Reeves
1660 Lincoln Street, Suite 2510
Denver, CO 80264
(303) 830-8800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Francisco L. Herrera, and Joanna Herrera, Co-Wrongful Death Representatives, for exclusive benefit of the beneficiaries of Monica Herrera, deceased.<br>    Plaintiff(s),<br><br>vs.<br><br>Gregory Buckingham and Deborah Buckingham, but in their individual capacities as Trustees of the Buckingham Family Trust; and Gregory Buckingham and Deborah Buckingham, as individual defendants; and Wyoming Mechanical, Inc., a Wyoming Corporation; Triangle Tube/Phase III Co. Inc., a New Jersey Corporation; and M&G DuraVent, Inc., a New York Corporation<br>    Defendant(s). | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 15-CV-128-NDF.<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT M&G DURAVENT, INC.'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

COMES NOW the Defendant, M&G Duravent, Inc. ("DuraVent"), by and through its attorneys, The Waltz Law Firm, and hereby submits its **Motion For Sanctions For Spoliation Of Evidence** and states as follows:

### Local Rule 7.1 CERTIFICATION:

Pursuant to L.R. 7.1 undersigned counsel certifies that he has consulted with WY Mechanical's counsel regarding the request made herein.  All counsel, except for Triangle Tube/Phase III Co, Inc., oppose the relief requested herein.

Defendant M&G DuraVent, Inc. moves for dismissal of all claims against it in this actions because all evidence required to proffer a defense in this litigation has been destroyed. In support, thereof, M&G shows this Court as follows:

## I.      Statement of Facts

This is not the first time Wyoming Mechanical, Inc. ("WYMech") has been involved in a wrongful death litigation. Exhibit A, *Depo. of Gary Bennett*, at 25:1-6. So, on January 30, 2015, when it received a late night call from one of its employees that Mrs. Herrara had died, it had a reason to be concerned. Exhibit B, *WYMech's Notes*. Indeed, the Buckinghams' had called days earlier and informed WYMech that the boiler "[s]ounds like a car hitting a wall, it's getting so loud when it bangs," and that had "pushed a piece of flue material apart." Exhibit C, *Message from 1/28/15; See also*, Exhibit B, *WYMech Notes*. Yet, WYMech did not warn the Buckinghams that a disconnected vent pipe was dangerous or otherwise advise them that carbon-monoxide would be released. Exhibit D, *Depo. of David Gieck, dated 11/19/15,* at 62:18-63:9. With notice that Mrs. Herrera was now dead, WYMech immediately called its lawyer, Jack Edwards, that night for advice. Exhibit B, *WYMech's Notes*. It would ultimately call its insurance agent the next morning and be told to "hold tight and see what happens." *Id.*

On February 2, 2015, still playing it over and over in its head as to what could have happened this time, WYMech decided it should talk to its installer, Aaron McCormick. It asked McCormick what was the "combustion like" on the boiler. Exhibit D, *Depo. of David Gieck, dated 11/19/15*, at 19:2-20:5. Although required, no combustion analysis has been done before

2

putting the boiler into service. *Id.*[1] Had the boiler been converted to propane? "Yes." WYMech "...had its answer. It had its question answered." *Id.*

WYMech called a business-wide meeting and instructed its employees to funnel all questions and comments through David Gieck. Exhibit B, *WYMech's Notes*. That same morning, Mr. Buckingham had called WYMech and asked it to "figure out what was going on" with the boiler. *Id.* WYMech called its insurance agent again and was told "that's between you and the homeowner." Exhibit A, *Deposition of Gary Bennett*, at 41:1-43:1. Yet, WYMech had not told the agent at that time the circumstances around Mrs. Herrera's death or how WYMech was involved. *Id.*

WYMech thereafter willfully tampered with evidence related to the boiler and vent pipes at issue in this litigation in an effort to cover-up a known bad installation and otherwise cast doubt onto others.[2] It knew from a prior wrongful death claim against it that its installation

---

[1] Triangle's manual mandates that all new installs include a combustion analysis and adjustments (where needed) to meet certain operation parameters. Exhibit F (60), *Installation Manual*, at TRIANGLE 67-68. Where the boiler is producing more than 100ppm, the installer needs to adjust the throttle screw and other components to reduce emissions to below 100ppm. *Id.* at 68. The performance of a combustion analysis it so ensure the boiler's safe operation. Exhibit E, *Depo. of McCormick,* at 59:5-61:5.

[2] It has also been determined that WYMech failed to follow the vent installation instructions in the following ways: 1) the Triangle Tube approved PolyPro 3PPS-LBC locking band was not used; 2) the vent pipe was not installed with a 5/8 inches per foot slope; 3) every horizontal section of the vent pipe was not supported; 4) the termination vent pipe was not properly/fully inserted into the vent termination; 5) the exterior termination location was not in

would be questioned.  Subsequently, it used the homeowner's request to "figure out what happened," as an opportunity to attempt to conceal evidence.

Metadata from WYMech's own photos shows that Mr. Gieck arrived shortly before 10:19am on February 2, 2015. Exhibit G, *David Gieck Photos w/properties.* His last photo was taken at 11:46 am. *Id.* At 10:21 am, Mr. Gieck staged the vent's locking band to portray it as not locked around the pipe's lip.[3] Exhibit H, *David Gieck Photo 102103*. He then noted in his litigation notes that he had found the "flu pipe pulled apart at one of the 90 degree elbows." Exhibit B, *WYMech's Notes*. Unbeknownst to Mr. Gieck, after Mrs. Herrera's death had been investigated by Chief Tucker of the Jackson Fire Department, the boiler was turned off and vent pipe was photographed. Exhibit I, *Chief Tucker Photos*. The same subject locking band was photographed by Chief Tucker. Exhibit J, *Tucker Photo*, dated 1/31/15 at 11:27am. That photo clearly shows the locking band fully engaged. Mr. Gieck also changed the tension (tightened or loosed a bolt) on the vent's support band and changed the insertion depth of the vent pipe. Exhibit K, *Comparison of all changes.*

At 10:24am, Mr. Gieck accessed the boiler and photographed the location of several calibration screws that control its function/performance. Exhibit L, Photo 102419. At 10:29am,

---

compliance with NFPA 54; 6) use of unauthorized vent components (i.e. Centrotherm 90-degree elbow) were used; and 7) the external termination plates were reversed. WYMech calls these merely "oversights." Exhibit E, *Deposition of Aaron McCormick, dated 4/26/16*, at 121:5-12. Although highly relevant to the claim of product liability, they are not material to this spoliation motion.

[3] The locking band installed was actually not approved for use by Triangle Tube. But, that issue will be addressed in DuraVent's Motion for Summary Judgment.

4

he removed the boiler's igniter.  Exhibit M, *David Gieck Photo 102947*.  The boiler's fuel orifice was removed and inspected.  He then turned on the boiler to conduct a combustion analysis.  Exhibit N, *David Gieck Photo 103617*.  He discovered that the boiler was producing twice the carbon-monoxide approved by Triangle.   Exhibit B, *WYMech's Notes*.  He thereafter changed the location of the throttle screw.  *Id*.  Although he claims to only have turned it 3/4 of a turn, there is no way to confirm if he turned it further than that at this time.  Exhibit K, *Comparison of all changes.*  He also modified the gas valve outlet pressure screw - for which he never disclosed to anyone.  *Compare*, Exhibit L, *David Gieck Photo 102419* to Exhibit O, *Freeman Photo 58,* taken 2/6/15; and Exhibit K, *Comparison of all changes.*

On February 3, 2016, WYMech affirmatively misrepresented to the Buckinghams that the boiler "ran a combustion analysis on the system and found it to be within acceptable parameters."  Exhibit P, *David Gieck E-Mail, dated 2/3/15*.  WYMech did not advise the Buckingham's that it had learned that Mr. McCormick had failed to conduct a combustion analysis to confirm the boiler was properly set-up and performing or that the boiler, as installed, was producing twice the carbon-monoxide permitted by Triangle.  *Id.*

During an inspection on February 3, 2015, the Buckingham's insurance adjuster, Boyd Roberts of Mountain West Farm Bureau, took photos of all parts of the boiler and venting system.  Exhibit Q, *Roberts Photos*.  M&G's label is clearly affixed to each component of the venting system.  Exhibit R, *Freeman Photo*, dated 2/6/15.   On February 6, 2015, the Buckingham's expert, Jay Freeman, joined Mr. Roberts and the Buckinghams' counsel, Kate Mead, for an inspection of the boiler and vent pipe.  Exhibit S, *Freeman Field Notes*.  At that inspection, Mr. Freeman identified M&G as the manufacturer of the vent pipe and all three discussed placing M&G on notice.  Exhibit T, *Deposition of Freeman*, at 145:10-146:23.

5

Mountain West has a department for providing such a notice  Exhibit U, *Deposition of Boyd Roberts*, at 47:16-49:16.  Yet, neither the Buckinghams, their lawyer nor their insurer ever gave notice to M&G.  Rather, they now claim they were under the impression that WYMech's lawyer, Mr. Edwards, would notify M&G.  Exhibit V, *Buckingham's Responses to M&G's Discovery*, at 3, ¶ 6.  WYMech's lawyer, Mr. Edwards, did notify Defendant Triangle Tube of the incident sometime before February 9, 2015 - but never provided notice to M&G.  *Id*, *Buckingham's Responses to M&G's Discovery*, at 3, ¶ 6.

A fourth inspection was scheduled for February 9, 2015.  In attendance were representatives of the Buckinghams, Triangle Tube and WYMech.  WYMech's lawyer, Mr. Edwards, talked to the insurance adjuster for the Buckinghams, Mr. Roberts, and advised him that he would personally be attending the inspection for WYMech.  Exhibit U, *Deposition of Roberts*, at 81:14-10.  Mr. Edwards never showed.  *Id.* 55:16-56:17.  At this inspection, WYMech disclosed that it had changed the setting of only the throttle screw.  With that limited understanding, the Buckinghams' expert, Freeman, set out to document the condition of the boiler and vent pipe.  Exhibit W, *Report of Freeman*, at 6.  Freeman visually returned the throttle screw to the position depicted by WYMech's photo.  *Id.*  Unaware of the change to the gas outlet pressure screw, no changes were done. Exhibit T, *Depo. of Freeman*, at 110:21-111:8. Similarly, Freeman was unaware that WYMech had manipulated the vent supports.  *Id.*  The boiler was operated again before the boiler's ignition, fuel orifice and the vent pipe were ultimately disassembled and inspected.  Exhibit X, *Freeman Photos*.

Thereafter, the system, including the vent pipes, were disassembled for transport.  The vent pipe uni-strut supports were left at the Buckingham home and reused.  Exhibit T, *Depo. of Freeman*, at 167:17-168:16.  The actual slope of the venting pipe was not documented prior to

dismantling.  *Id*.  It is undisputed that the venting slope was less than the 5/8" per foot as required by Triangle Tube.

Load straps were then applied directly against the body of the boiler's aluminum frame. Exhibit U, *Depo. of Roberts* at 58:1-60:18.  The straps were tightened down to force the boiler against the bed of the truck to prevent it from sliding around.  *Id.* No crating or framing was used to protect the boiler from the crush caused by tightening of the straps.  *Id.* at 26:12-27:2.  The vent pipe and parts were simply slid between the body of the boiler and the tightened straps.  *Id.* at 60:6-17.  They were not wrapped or otherwise cushioned to protect their condition.  A month later, the boiler and vent pipes were transported in the same manner over a eight (8) hour road trip to Denver, Colorado.  *Id.* at 26:3-15.

Whatever condition existed in the boiler and venting system at the time of Mrs. Herrera's death has been permanently lost such that the forces actually being exerted on the vent pipe cannot be documented.  Those conditions were lost by the willful tampering of WYMech prior to any expert arriving on site, and by various manipulations by experts on the boiler prior to any notice to M&G.  Loss of the conditions existing at the time of Mrs. Herrera's death have deprived M&G of any ability to defend against Plaintiffs' and WYMech's claims.  Exhibit Y, *Skaggs Report*, at 10.

## II.     Argument and Citation to Authority

"'Spoliation' has been defined as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable *1195 litigation.' " *Asher Assocs. v. Baker Hughes Oilfield Operations,* No. 07–cv–01379, 2009 WL 1328483, at *5 (D.Colo. May 12, 2009) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)).  Spoliation sanctions are proper when "(1) a party

has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir.2007).

The imposition of a negative inference requires a showing of bad faith. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997), (citing *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir.1985)). But, sanctions such as dismissal of claims and exclusion of evidence do not require such a showing. *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.,* 139 F.3d 912 at*4 (10th Cir. 1998) (citations omitted). When deciding whether to sanction a party for the spoliation of evidence, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party. *Jordan F. Miller Corp.,* 139 F.3d at 912, *4. M&G moves for the dismissal of all claims against it by Plaintiffs and WYMech.

### A.  Culpability

WYMech intentionally destroyed evidence and attempted to cover-up its bad installation within 48 hours of learning of Mrs. Herrera's death. WYMech then compounded the problem by misrepresenting information about the boiler and its original condition. These actions constitute an egregious conduct. Harsh sanctions are therefore appropriate. Although it appears most of the evidence had already been destroyed by the end of February 2, 2015, the other parties nonetheless believed they were handling the boiler and vent as installed. Indeed, numerous discussions occurred, yet no one notified M&G of any incident or claim before disassembling the equipment and then casually strapping it into a truck to be hauled to Denver. Any sense of obligation to M&G or the investigation process was knowingly ignored for their own interests.

### B. Prejudice

How the boiler burns fuel is singularly the most important piece of evidence in this litigation. To determine why/how the venting pipe became disconnected one would need to know 1) the temperatures being exerted by the boiler on the vent pipe exhaust, and 2) the force of the actual explosions being exerted on the vent connections. Exhibit Z, *Depo. of Skaggs*, at 160:1-21; 161:22-162:5. It is undisputed that no one has been able to get the boiler to burn/explode at the levels described by the Buckinghams and/or at levels required for vent pipe dislocation while still in place. *Id*, at 6:2-19; 156:18-157:5. Additionally, the vent supports and venting slope are conditions created at the time of install and are controlled by clear installation instructions contained in Triangle's Vent Supplement Pre-Installation Requirements. Exhibit AA, *Vent Supp., at M&G/Buck 00047*. Where the vent supports are too tight, they hinder the pipes ability to stay together. Exhibit Z, *Depo. of Skaggs*, at 158:3-159:20.

On February 9, 2015, other parties disassembled the boiler and venting. They left the supports at the home and did nothing to document their actual position/tightness. Then, they transport of the boiler and vent pipe with no sense of preservation of their conditions such that the items' conditions continued to change. The condition of the vent pipe components and the boiler is material to determining how the Buckingham's boiler was operating on the night of the event. Destruction of that evidence has deprived M&G of any means of defending itself.

### C. Sanctions Are Proper

WYMech currently maintains a claim for common-law indemnity against M&G. On its spoliation actions alone, the cross-claim should be dismissed as a sanction for the destructive acts of WYMech. Moreover, common-law indemnity claims are equitable in nature. *Schneider*

9

*Nat., Inc. v. Holland Hitch Co.,* 843 P.2d 561, 576 (Wyo. 1992). As such, "[h]e who comes into equity must come with clean hands." See, *Harsha v. Anastos*, 693 P.2d 760, 762 (Wyo. 1985). WYMech's unclean hands demand dismissal of its cross-claim.

Although not involved with WYMech's destruction of evidence, Plaintiffs still had an obligation to ensure the preservation of the evidence and are not permitted to benefit from that destruction. *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.,* 139 F.3d 912 at *5. Plaintiffs were aware of the death of Mrs. Herrera and did nothing to prevent the destruction of evidence. Plaintiffs appear to have originally understood the limitations of their claims against the manufacturers. This Court noted in February 19, 2016 pre-trial conference that Plaintiffs' counsel had affirmatively represented to the Court that it would not be adding M&G to the litigation at the previous pre-trial conference that occurred on October 29, 2015.[4]

Dismissal of Plaintiffs' claims is proper. Although Plaintiffs may not have destroyed the evidence themselves, they had a duty to preserve the evidence and did not. Moreover, M&G has been deprived of any ability to defend against Plaintiffs' claims because of the actions of WYMech. To permit Plaintiff to maintain its claims against M&G would constitute a violation of due process and a windfall to the Plaintiffs. At a minimum, the evidence should be excluded in its entirety, or a limiting instruction informing the jury that WYMech destroyed the evidence because it would be detrimental to its case should be given as to Plaintiffs' claims only.

---

[4] Recently, both Cuzzillo and Wyoming Mechanic's expert, Passamaneck, testified they intentionally "sat on" their opinions about M&G until June 2016. Their decision to withhold their opinions and lay in wait will be discussed in another motion.

## CONCLUSION

Wherefore, Defendant M&G DuraVent, Inc. asks this court to dismiss all claims against it by Plaintiffs and Wyoming Mechanical, Inc. for the destruction of evidence.

Respectfully submitted this 31st day of August, 2016.

s/Christopher R. Reeves
Richard A. Waltz, Esq., *pro hac vice*
Christopher R. Reeves, Esq., #7-5386
Wyoming Bar No. 7-5386
The Waltz Law Firm
1660 Lincoln Street, Suite 2510
Denver, CO 80264
Telephone: 303-830-8800
Facsimile: 303-830-8850
dwaltz@waltzlaw.com
creeves@waltzlaw.com

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2016, a true and correct copy of the above **Defendant M&G Duravent, Inc.'s Motion For Sanctions For Spoliation Of Evidence** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David G. Lewis, WY Bar. #4-1150
P.O. Box 8519
Jackson, WY 83002
Tel.: (307) 739-8900
Fax: (307) 739-8902
davelewis@bresnan.net
Counsel for Plaintiffs

Katherine L. Mead, WY Bar #5-2432
Mead & Mead
1200 N. Spring Gulch Rd
P.O. Box 1809
Jackson, WY 83001
Tel.: (307) 733-0166
Fax: (307) 733-7590
kate@meadlaw.net
Counsel for Gregory & Deborah
Buckingham; Buckingham Family Trust
Trustee G Buckingham & Trustee D
Buckingham; Cross Claimants

Julie Nye Tiedeken, - WY Bar #5-1949
Sean W. Scoggin  - WY Bar # 6-3263
McKellar, Tiedeken & Scoggin
702 Randall Avenue
Cheyenne, WY 82001
Tel.: (307) 7637-5575
Fax: (307) 7637-5515
jtiedeken@mtslegal.net
sscoggin@mtslegal.net
Counsel for Wyoming Mechanical, Inc.;
Cross Defendant

Cameron S. Walker, Attorney No. 5-1451
Judith A. Studer, Attorney No. 5-2174
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, WY 82601
Tel: (307) 235-6681
Fax: (307) 234-5099
cam@schwartzbon.com
jstuder@schwartzbon.com
Counsel for Triangle Tube/Phase III, CO.,
Defendant

Joseph P. McGill (Pro Hac Vice)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, Ml 48152
Tel: (734) 742-1825
Fax: (734) 521-2379
jmcgill@fbmjlaw.com
Co-Counsel for Triangle Tube/Phase III,
CO., Inc.
Defendant

s/Christopher R. Reeves

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Francisco L. Herrera, and Joanna Herrera, Co-Wrongful Death Representatives, for exclusive benefit of the beneficiaries of Monica Herrera, deceased.<br>     Plaintiff(s), | )<br>)<br>)<br>)<br>) Civil Action No. 15-CV-128-NDF. |
| vs. | )<br>)<br>) |
| Gregory Buckingham and Deborah Buckingham, but in their individual capacities as Trustees of the Buckingham Family Trust; and Gregory Buckingham and Deborah Buckingham, as individual defendants; and Wyoming Mechanical, Inc., a Wyoming Corporation; Triangle Tube/Phase III Co. Inc., a New Jersey Corporation; and M&G DuraVent, Inc., a New York Corporation<br>     Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING M&G DURAVENT, INC.'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

THIS MATTER COMING before the Court upon M&G'S Motion for Sanctions for Spoliation of Evident and the Court having reviewed the Motion, Responses and Replies, if any, and being otherwise fully advised in the premises, does hereby dismiss all claims against M&G DuraVent, Inc. by Plaintiffs and Wyoming Mechanical, Inc. for the destruction of evidence.

DATED this _____ day of August, 2016.

BY THE COURT:

_____