

## Disclosure of Expert Testimony

## F.R. 26(a)(2)

FRANCISCO L. HERRERA, and JOANNA HERRERA,
CO-WRONGFUL DEATH
REPRESENTATIVES, for the exclusive
benefit of the beneficiaries of MONICA HERRERA deceased

v

GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in their
individual capacities as Trustees of the BUCKINGHAM FAMILY TRUST;
and, GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM as individual
defendants; and, WYOMING MECHANICAL, INC. a Wyoming
Corporation; TRIANGLE TUBE PHASE III CO. INC .., a New Jersey Corporation;
and, M&G GROUP  DURAVENT, INC., a New York Corporation

United States District Court for the District of Wyoming

No. 15-CV-128-F

Prepared by:

Joseph D. Skaggs, PE, CFEI
Principal, Metallurgical/Materials Engineer
Case Forensics Corporation

Reviewed by:

Craig Rice, PE, CFI
Principal, Engineer
CASE Forensics Corporation



**Exhibit Y**

CASE Forensics Corporation                                                    Page ii
Herrera v M&G Duravent Group *et al*                                      June 1, 2016
United States Wyoming District Court                             Our File No: 209168
No. 15-CV-128-F

Table of Contents

1.      Synopsis ................................................................................................ 1

2.      Information Considered ......................................................................... 2

3.      Background Information ........................................................................ 3

4.      Opinions and Bases .............................................................................. 4

5.      Qualifications of the Authors .............................................................. 21

6.      Testimony Records .............................................................................. 26

7.      Compensation ...................................................................................... 28

8.      Exhibits to be Used at Trial ................................................................ 30



C ASE Forensics Corporation                                                    Page 1
Herrera v M&G Duravent Group *et al*                                         June 1, 2016
United States Wyoming District Court                                  Our File No: 209168
No. 15-CV-128-F

## 1. SYNOPSIS

On January 30 of 2015, Ms. Monica Herrera was fatally overcome by carbon monoxide gas after she entered the Buckingham residence in Teton County, WY to perform her usual housekeeping duties. CASE was retained by the Waltz Law Firm on behalf of M&G Group / Duravent to determine the cause of the incident.

Based on our investigation to date, CASE has determined that the Triangle Tube Prestige boiler and Duravent polypropylene vent piping system installed at the residence in November of 2015 by Wyoming Mechanical was defectively installed in numerous respects. CASE has also learned through examination of documents and the evidence artifacts recovered from the structure that either or both delayed ignition and thermal expansion effects could have caused the Duravent vent pipe to become dislodged at a connection, allowing combustion byproducts including carbon monoxide to build to lethal levels.

Alteration of the scene and evidence by Wyoming Mechanical and to a lesser degree by other investigating parties prior to CASE's involvement and with insufficient documentation has prevented CASE from determining if either or both delayed ignition and failure to properly accommodate thermal expansion in the vent piping is the root cause of the incident.



C ASE Forensics Corporation                                    Page 2
Herrera v M&G Duravent Group *et al*                        June 1, 2016
United States Wyoming District Court               Our File No: 209168
No. 15-CV-128-F

## 2.  INFORMATION CONSIDERED

CASE was provided with numerous disclosures, depositions, and the exhibits. Rather than enumerate every document provided to CASE, we choose to list the documents specifically referred to in the footnotes to this report.  If a comprehensive list is desired, CASE will supplement this report with that list.



C ASE Forensics Corporation                                                     Page 3
Herrera v M&G Duravent Group *et al*                                           June 1, 2016
United States Wyoming District Court                                  Our File No: 209168
No. 15-CV-128-F

---

## 3. BACKGROUND INFORMATION

The property at 8935 E. Ditch Creek Road in Teton County near Jackson Hole, WY was purchased by the Buckinghams in 2007-2008.[1] The property, shown in Figure 1, consists of the main residence, occupied by the Buckinghams and several secondary structures, both residences and otherwise. The Buckinghams occupy the residence indicated with the white arrow in Figure 1 full-time. A caretaker, Mr. Schuler and his wife also reside full-time in one of the structures, indicated with a black arrow in Figure 1.



**Figure 1: Google Earth image of the property at 8935 E. Ditch Creek Road.**

In November of 2014, a Triangle Tube Prestige 175 boiler[2] was installed in the residence by Wyoming Mechanical. On or around January 26 of 2015, Mr. Buckingham mentioned to Mr.

---

[1]      Buckingham 5:2-3

[2]      Many appliances like the Triangle Tube Prestige line of boilers do not actually boil water, they merely heat the water or working fluid in the heat exchanger. However, the HVAC industry overwhelmingly refers to these devices as boilers. Throughout this report, CASE uses the same convention to reduce any potential confusion on the reader's part.



C ASE Forensics Corporation                                           Page 4
Herrera v M&G Duravent Group *et al*                                June 1, 2016
United States Wyoming District Court                          Our File No: 209168
No. 15-CV-128-F

Schuler that he'd heard noises coming from the boiler. Mr. Buckingham related the following
testimony regarding the noises:

> *A. At Wyoming Mechanical. I said it's making a loud noise, a banging noise, and
> shaking. And it's just like a car. Can you go sit in the garage and watch it,
> because you need to know when it occurs. And so I said, no, I'm not going to sit
> in the garage, but if I notice it, or you can send somebody out to sit in the
> garage. So I happened to go out and be on the elliptical machine –*
> *Q. That's an exercise machine?*
> *A. -- in the garage. Yes.*
> *Q. Okay.*
> *A. And I heard the machine go boom. And in my brain it clicked as that's the
> same time the thermostat setting is coming on, so I reported that finding. I went
> back in and called and said it appears to be that's when the thermostat is kicking
> on.* [3]

Testimony by Mr. Buckingham and Mr. Schuler indicates that while the boiler was
malfunctioning, the M&G Duravent vent pipe system installed by Wyoming Mechanical had
separated at a joint and left the vent pipe open inside the garage where it was installed. According
to Buckingham and Schuler, both of them at separate times pushed the disconnected vent pipe
back into the fitting and attempted to reinstall the retaining clip that provides additional retention
of components in the joints.

According to the various accounts of the events leading up to Ms. Herrera's demise, Wyoming
Mechanical was contacted on January 28 or 29 of 2015 and scheduled to examine the boiler at the
residence on February 2 of 2015. According to all accounts, Wyoming Mechanical did not warn
either Buckingham or Schuler that the potential for exposure to colorless, odorless, poisonous
carbon monoxide gas was a life safety threat to anyone in the residence. Mr. and Mrs. Buckingham
left for California on January 29 of 2015, leaving the home unoccupied.

Around 10:30 AM on January 30, 2015, the decedent, Ms. Herrera arrived at the home to perform
housekeeping. She failed to contact her husband in the early afternoon and did not respond to his
phone call. In the evening of January 30, Mr. Schuler noticed that Ms. Herrera's car was still
parked at the Buckingham residence, which was unusual. He testified that upon entering the garage
to investigate, the garage was warm and humid. He found Ms. Herrera on the floor where she had
been overcome and perished. Subsequent investigation by the local authorities determined that Ms.
Herrera perished due to carbon monoxide poisoning.

---

[3]      Buckingham 60:4-21



C ASE Forensics Corporation                                              Page 5
Herrera v M&G Duravent Group *et al*                                 June 1, 2016
United States Wyoming District Court                        Our File No: 209168
No. 15-CV-128-F

CASE Forensics Corporation was retained on January 29 of 2016 by the Waltz Law Firm, counsel for M&G Group, the manufacturer of the Duravent polypropylene piping system used to vent the combustion products from the boiler through the wall of the garage and to the exterior. CASE understands that prior to our retention, several examinations were conducted at the residence, and that the subject boiler had been removed from the residence and retained for future examination and testing. CASE attended a group examination of the boiler and vent pipe recovered from the residence at Advanced Engineering Investigations (AEI) in the Denver area on April 28 of 2016.

<u>Boiler Examination</u>

On April 28 of 2016, CASE participated in a joint examination of the boiler and vent piping that had been removed from the residence. The boiler, which was configured for use with propane gas, was connected to the vent piping, which had been reassembled in a configuration similar to the installation in the Buckingham residence, except that the unistrut[4] pipe supports from the Buckingham residence were apparently not recovered from the scene. No anomalies in operation were noted during the April 2016 testing. However, both Jay Freeman (of AEI) and Bernard Cuzzillo of BEAR Laboratories indicated in their earlier reports that instances of delayed ignition were observed during the at-scene testing and subsequent lab exam at AEI that CASE did not attend.

The short section of vent pipe that was reportedly disconnected at the time of Ms. Herrera's death (see Figure 2) had multiple, parallel marks upon it from the fitting and the retaining clip. (Figure 3) Those markings indicated that the fitting likely worked its way loose over time, rather than during a single, isolated incident.

During the examination, the joint that reportedly separated just prior to Ms. Herrera's death was inserted into the corresponding fitting and tested to determine the force required to separate the fitting without a retaining clip present.  A Mark-10 digital force gauge was used to determine the necessary force to separate the joint. The peak force was recorded twice, with peak separation forces recorded at 44 and 80 lbf.

**The fittings at joints "E" and "F" on the exhaust vent had multiple instances of parallel scratches with the same spacing as the points of the locking clip. The witness marks indicated that in both**

---

[4]    "Unistrut®" is a registered trademark of Unistrut USA, a part of the Atkore Corporation. The term "unistrut" is commonly used to refer to a number of similar products on the market, similar to "Kleenex" or "Xerox". For the purposes of this report, "unistrut" is used in the vernacular and is not intended to imply that the supports were Unistrut-brand products.



C ASE Forensics Corporation                                             Page 6
Herrera v M&G Duravent Group *et al*                                June 1, 2016
United States Wyoming District Court                    Our File No: 209168
No. 15-CV-128-F

**locations,     the     locking     clips     were     replaced     multiple     times.     (Figure     4     and**

 

Figure 5)



**Figure 2: The end of the vent system closest to the wall penetration.  The joint at "F" indicated by the arrow is the joint most likely to have separated based on the evidence.[5]**

---

[5]    Photographs included or appended to this report may have been cropped or had contrast/brightness adjustments made to eliminate irrelevant background details or to highlight regions of interest. Original copies of all photographs by CASE are retained in our project file and can be made available upon request.



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 7
June 1, 2016
Our File No: 209168



**Figure 3: Photograph showing the end of the segment of vent pipe between joints "E" and "F". Witness marks from the retaining clip are encircled.**



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 8
June 1, 2016
Our File No: 209168



**Figure 4: Photograph of the position of the locking clip tab at joint "F" during the April 2016 exam, showing witness marks from the end of the clip.**

 

**Figure 5: additional witness marks form the locking clip on the "F" joint.**



C ASE Forensics Corporation                                              Page 9
Herrera v M&G Duravent Group *et al*                               June 1, 2016
United States Wyoming District Court                       Our File No: 209168
No. 15-CV-128-F

One of the fittings in the venting system was incorrect. It was a Centrotherm product, and not a Duravent product. The Triangle Tube and Duravent installation manuals examined by CASE both indicated that components from different manufacturers should not be mixed together in the venting system.

**CASE Comment:** The use of an incorrect elbow in the vent pipe system was not a likely cause of the incident or of the reported delayed ignition events. However, it does speak to Wyoming Mechanical's overall quality of work and lack of diligence in reading the manuals.

Hypotheses of Failure

Based on the documents and evidence examined by CASE, several hypotheses could explain the separation of the vent pipe. Those hypotheses are:

1. High pressure in the vent pipe:  Pressure excursions in the vent pipe would tend to force the various sections of vent apart. The most likely cause of a pressure excursion with enough of a pressure increase to separate the sections of vent pipe is a delayed ignition event, in which propane gas accumulates in the heat exchanger or vent pipe prior to ignition by the spark igniter. When the burner finally lights, the fugitive gas is also ignited and burns in an uncontrolled manner, resulting in pressure excursions.

2. Relative motion due to thermal expansion: Polypropylene, like most materials, grows in all dimensions as it warms. It is possible that the combination of unsupported piping, clamps, and the cyclical length changes in the vent pipe as the boiler operates and then shuts off could cause the pipe to work loose over time, resulting in its eventual disconnection. Evaluating this theory would require detailed empirical data on the operation of the boiler and vent system as the system operates over multiple heating cycles. The onsite investigations prior to removing the boiler apparently did not collect the data necessary to evaluate the theory.

3. Improper securing of the vent clip during installation: If the vent clip had been improperly secured during any or a combination of installation by Wyoming Mechanical and the subsequent manipulation of the piping by Buckingham and Schuler, the vent would have been more likely to separate. Because the piping was reconnected after the incident, CASE does not have sufficient data to evaluate the hypothesis.



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 10
June 1, 2016
Our File No: 209168

Limitations on the Investigation

The following limitations impacted the scope of CASE's investigation and analysis:

1. The boiler was examined and the throttle screws were adjusted by Wyoming Mechanical prior to onsite examinations. CASE is unaware of any data related to the original position of the throttle screw or a combustion analysis at the time the boiler was installed. Changing the throttle screw settings would likely affect the propensity for delayed ignition, as well as the CO, excess oxygen, and flue gas temperatures. By altering the setpoints of the gas control valve after the incident, Wyoming Mechanical prevented investigators from determining the actual operating conditions at the time of the incident.

2. None of the onsite testing replicated the failure mode. Although investigators at the residence observed one or more delayed ignition events, there are no reports of the vent pipe separating during those events. As discussed above, by the time the joint scene examination took place, the gas controls had already been adjusted by Wyoming mechanical, eliminating the possibility of replicating the failure.

3. No data on the tightness of the support brackets on the vent piping prior to disassembly was reported. The lack of data would hamper attempts to estimate or model the potential for relative motion at the joints due to thermal expansion. Additionally, data on the temperature and temperature gradients in the vent pipe would be necessary to model the effects of thermal expansion on the system. Due to the gas control valve adjustments by Wyoming Mechanical and the disassembly of the vent system by Advanced, empirical measurements can no longer be made.

4. Although delayed ignition events were reportedly observed during the onsite examination, no recordings of pressure transients in the vent piping were apparently made. The lack of pressure transient data precludes calculating the actual loading on any of the joints in the system for comparison to test data.

5. Testing the boiler in the Denver area, with an altitude of 5200-5500 feet would affect the combustion analysis results, because the elevation at the Buckingham residence was approximately 7000 feet. The lower overall air density at 7000 feet compared to 5500 feet would tend to cause a more fuel-rich condition at the higher elevation, other factors being equal. More fuel-rich conditions would promote delayed / improper ignition without enough excess air to compensate for the reduced air density.



C ASE Forensics Corporation                                    Page 11
Herrera v M&G Duravent Group *et al*                          June 1, 2016
United States Wyoming District Court                     Our File No: 209168
No. 15-CV-128-F

---

### 4. OPINIONS AND BASES

Based on the foregoing, to a reasonable degree of engineering probability, CASE has the following opinions regarding the incident. Please note that CASE reserves the right to amend or modify our opinions and the bases for them if additional data becomes available.

Opinion

4.1.    The subject Triangle Tube boiler and its vent system were installed improperly and illegally by Wyoming Mechanical.

Bases

4.1.1.    No building permit was obtained prior to installing the boiler. According to the Teton County building code (based on the International model codes), a permit would be required for installation of a new boiler. The current 2012 International Fuel Gas Code states that:

> **[A] 106.1 Where required.** An owner, authorized agent or contractor who desires to erect, install, enlarge, alter, repair, remove, convert or replace an installation regulated by this code, or to cause such work to be done, shall first make application to the code official and obtain the required permit for the work.
>
> **Exception:** Where *appliance* and *equipment* replacements and repairs are required to be performed in an emergency situation, the permit application shall be submitted within the next working business day of the Department of Inspection.

The lack of a bar or arrow in the margin of the code indicates that the section was not changed from the previous version of the code, circa 2009.

4.1.2.    As installed at the residence, the run of pipe between the final segment of unistrut and the termination cap was unsupported. According to the installation manual, every segment of pipe should have been supported, regardless of length. The lack of support introduces additional degrees of freedom at the joint that separated, because vertical motion of the vent pipe was not controlled by supports. CASE did not have the opportunity to determine the potential effect of the improper support on the vent system, because the evidence was altered by Wyoming Mechanical prior to the scene investigation.



C ASE Forensics Corporation                                          Page 12
Herrera v M&G Duravent Group *et al*                                 June 1, 2016
United States Wyoming District Court                                 Our File No: 209168
No. 15-CV-128-F



**Figure 6: Photograph by AEI showing the end of the vent piping as examined at the scene. The arrows (added by CASE) show the unsupported segments of vent pipe.**

4.1.3.  The vent pipe system had one elbow in it that was manufactured by Centrotherm and not M&G / Duravent, despite clear instructions in the boiler installation manual not to mix components from different manufacturers in the vent system.

4.1.4.  Testimony by employees of Wyoming Mechanical indicated numerous failures to follow the installation instructions. Most importantly, no combustion analysis was performed. Combustion analysis by Wyoming Mechanical and AEI (separately) after the incident indicated that the boiler was producing too much carbon monoxide and had too little excess oxygen in the combustion products. The findings of that test indicated that the boiler was likely running slightly rich, which is to say that there was excess propane in the combustion chamber.

4.1.5.  Installation in contravention of the manufacturer's instructions does not comport with the 2009 or 2012 International Fuel Gas Code, which states in §305.1:



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 13
June 1, 2016
Our File No: 209168

> **305.1 General.** *Equipment* and appliances shall be installed as required by the terms of their approval, in accordance with the conditions of listing, the manufacturer's instructions and this code. Manufacturers' installation instructions shall be available on the job site at the time of inspection. Where a code provision is less restrictive than the conditions of the listing of the *equipment* or *appliance* or the manufacturer's installation instructions, the conditions of the listing and the manufacturer's installation instructions shall apply.

If Wyoming Mechanical had obtained the required permit and inspection prior to placing the boiler in service, the inspector or authority having jurisdiction would have at least had the opportunity to inspect the system and possibly identify the deficient installation.

Opinion

4.2.    Buckingham and Schuler failed to recognize the warnings provided on the Duravent piping.

4.2.1.    As shown in Figure 7, every segment of the Duravent pipe has a warning label affixed to it that warns the reader of the dangers associated with carbon monoxide.



C ASE Forensics Corporation                                                Page 14
Herrera v M&G Duravent Group *et al*                                    June 1, 2016
United States Wyoming District Court                              Our File No: 209168
No. 15-CV-128-F



**Figure 7: One of the warning labels on the Duravent piping.**

<u>Opinion</u>

4.3.   Wyoming Mechanical should have shut down the boiler and advised Buckingham of the unsafe condition when Wyoming Mechanical became aware that the vent pipe had separated.

4.3.1.   Wyoming Mechanical employees testified that they knew carbon monoxide was a deadly hazard.

4.3.2.   The 2012 International Fuel Gas Code (IFGC) was in effect in Teton County at the time Wyoming Mechanical was contacted in January of 2015.

4.3.3.   Appendix D of the 2012 IFGC, while not a mandatory part of the standard according to the International Code Council, does provide relevant guidance for safety inspections of equipment. Specifically, the recommended practice states:



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 15
June 1, 2016
Our File No: 209168

The following procedure is intended as a guide to aid in determining that an *appliance* is properly installed and is in a safe condition for continuing use.

This procedure is intended for cental furnace and boiler installations and may not be applicable to all installations.

(a) This procedure should be performed prior to any attempt at modification of the *appliance* or of the installation.

(b) If it is determined that there is a condition that could result in unsafe operation, shut off the appliance and advise the owner of the unsafe condition. The following steps should be followed in making the safety inspection:

1  Conduct a check for gas leakage. (See Section 406.6)

2. Visually inspect the venting system for proper size and horizontal pitch and determine there is no blockage or restriction, leakage, corrosion and other deficiencies that could cause an unsafe condition.

**Figure 8: Excerpt from 2012 IFGC Appendix D. Emphasis added by CASE.**

Opinion

4.4.    The boiler experienced multiple malfunctions over time. The incident was not due to a single event that caused the vent to separate, but was rather the result of an ongoing pattern of behavior.

Bases

4.4.1.    CASE observed multiple circumferential witness marks on the piping from the separated joint.

4.4.2.    Longitudinal witness marks from the teeth on the locking clip indicated the locking clip had been installed at least three times at the separated joint.

4.4.3.    Both Mr. Buckingham and Mr. Schuler reported that they had found the vent pipe loose at different times.

4.4.4.    During the onsite inspection, the boiler was reportedly found to have over 28,000 ignition incidents over the time period when it was in service – a total of approximately three months. (Figure 9) If the boiler were in service for 90 days and had only 20,000 ignitions there would have been approximately 222 ignitions per day, or just over one ignition every 6-1/2 minutes, around the clock. The high number of ignition events, or attempted ignition events,



C ASE Forensics Corporation
Herrera v M&G Duravent Group *et al*
United States Wyoming District Court
No. 15-CV-128-F

Page 16
June 1, 2016
Our File No: 209168

indicates that the boiler was potentially not igniting correctly, resulting in frequent resets and multiple lighting attempts consistent with delayed ignition.



**Figure 9: Information screen on the boiler. Photograph by AEI on February 11, 2015.**

Opinion

4.5.   The subject boiler was exhibiting symptoms of delayed ignitions prior to the incident.

Bases

4.5.1.   Mr. Buckingham and Mr. Schuler both reported hearing anomalous noises while the boiler was igniting.

4.5.2.   Mr. Cuzzillo and Mr. Freeman both reported delayed ignition events during the scene investigation and during the first examination at AEI prior to CASE's retention, even after Wyoming Mechanical altered the throttle screw and potentially other settings on the gas control.



C ASE Forensics Corporation                                         Page 17
Herrera v M&G Duravent Group *et al*                              June 1, 2016
United States Wyoming District Court                      Our File No: 209168
No. 15-CV-128-F

Opinion

4.6.  The Duravent pipe was not designed for, or required to be designed for, containing the excess pressure from a delayed ignition event.

Bases

4.6.1.  The Duravent system was certified to the requirements of CUL S-636 according to the Duravent literature.

4.6.2.  CUL S-636[6] requires that the vent be tested for leakage at a pressure of 100 Pa (Pascals) which is equal to 0.014 PSI, or 0.401 inches of water column, not the pressure necessary to separate a joint.

4.6.3.  CASE found no references in the CUL S-636 standard requiring a test against an internal overpressure event.

4.6.4.  Based on the minimum recorded separation force measured by CASE of 44 lbf without a locking clip, and taking the outside diameter of the vent pipe as three inches, CASE calculated the minimum overpressure required to displace the pipe from the elbow to be on the order of 8 PSI. For an open-pipe system, an 8 PSI overpressure is a very high value, equivalent to the blast overpressure that would likely result in total destruction of most structures in a larger-scale explosion.[7] There is no language in the certification standard requiring that degree of margin.

---

6        M&G Documents, Bates Nos. M&G 000001 to M&G 000075

7        Zipf, K and Cashdollar, K, "Effects of Blast Pressure on Structures and the Human Body", https://www.cdc.gov/niosh/docket/archive/pdfs/NIOSH-125/125-ExplosionsandRefugeChambers.pdf, last accessed May 31, 2016.



Table 1 – Effect of various long duration blast overpressures and the associated maximum wind speed on various structures and the human body.

| Peak overpressure | Maximum wind speed | Effect on structures | Effect on the human body |
|---|---|---|---|
| 1 psi | 38 mph | Window glass shatters | Light injuries from fragments occur |
| 2 psi | 70 mph | Moderate damage to houses (windows and doors blown out and severe damage to roofs) | People injured by flying glass and debris |
| 3 psi | 102 mph | Residential structures collapse | Serious injuries are common, fatalities may occur |
| 5 psi | 163 mph | Most buildings collapse | Injuries are universal, fatalities are widespread |
| 10 psi | 294 mph | Reinforced concrete buildings are severely damaged or demolished | Most people are killed |
| 20 psi | 502 mph | Heavily built concrete buildings are severely damaged or demolished | Fatalities approach 100% |

**Figure 10: Blast overpressure effects, from Zipf & Cashdollar, see footnote 7.**

**CASE Comment:** Blast overpressure from an explosion and the pressure transient in an open-ended pipe are not directly analogous to one another. However, despite the differences, it is instructive to consider that even relatively "low" overpressure on the order of a few PSI can cause high forces on elements of the system, due to surface area effects.

Opinion

4.7.    None of the evidence or testing to date indicates that the vent pipe would have failed absent the improper installation or malfunctioning of the boiler

Bases

4.7.1.   See bases 0, 4.6.2, and 4.6.4



C ASE Forensics Corporation                                                                Page 19
Herrera v M&G Duravent Group *et al*                                                      June 1, 2016
United States Wyoming District Court                                          Our File No: 209168
No. 15-CV-128-F

Opinion

4.8.    Alteration of the scene and evidence by Wyoming Mechanical and others reduced
        CASE's ability to fully evaluate the boiler and vent system.

Bases

4.8.1.    The boiler was examined and the throttle screws were adjusted by Wyoming
          Mechanical prior to onsite examinations. CASE is unaware of any data related
          to the original position of the throttle screw or a combustion analysis prior to
          adjustment. Changing the throttle screw settings would likely affect the
          propensity for and intensity of delayed ignition, as well as the CO, excess
          oxygen, and flue gas temperatures, all of which would be vital parameters for
          evaluating the various theories of failure discussed above.

4.8.2.    No data on the tightness of the clamps or brackets on the vent piping prior to
          disassembly was reported. The lack of data would hamper attempts to estimate
          or model the potential for relative motion at the joints due to thermal expansion.

4.8.3.    Although delayed ignition events were reportedly observed during the onsite
          examination, no recordings of pressure transients in the vent piping were
          apparently made. The lack of pressure transient data precludes calculating the
          actual loading on any of the joints in the system for comparison to test data.
          Even if such measurements had been made, they would have been limited in
          accuracy and precision due to Wyoming Mechanical's alteration of the
          evidence prior to the group scene examination.

Opinion

4.9.    The root cause of the separation of the vent piping is undetermined.

Bases

4.9.1.    More than one viable hypothesis for the separation has been developed.
          Specifically, either or both of the delayed ignition and thermal expansion
          theories could explain the separation of the vent pipe.

4.9.2.    The testing performed to date by all parties has been insufficient to replicate the
          failure or eliminate all the alternate theories.



C ASE Forensics Corporation

Herrera v M&G Duravent Group *et al*

United States Wyoming District Court

No. 15-CV-128-F

Page 20

June 1, 2016

Our File No: 209168

4.9.3.    Alteration of the evidence in the form of the throttle screw adjustments by Wyoming Mechanical, disconnecting the boiler from the subject propane gas supply, disassembly of the vent system, and testing the boiler at a lower elevation than it was installed all reduce the accuracy of any subsequent testing.



## 5. QUALIFICATIONS OF THE AUTHORS

# JOSEPH D. SKAGGS, PE, CFEI, CXLT

Principal, Metallurgical/Materials Engineer

jskaggs@case4n6.com
**Denver Office 303.279.2768**

**SUMMARY**

Joe Skaggs is a company Principal and Metallurgical and Materials Engineer specializing in product failure analysis, fire investigations and premises liability for law firms, insurance companies and industry. He holds Bachelor and Master Degrees in Metallurgical and Materials Engineering from the Colorado School of Mines. As a Certified Fire and Explosion Investigator, Mr. Skaggs applies his knowledge about characteristics and behavior of metals and other materials to arcing associated with aluminum and copper conductors, examination of electrical contacts and product failure analysis to determination the root cause of fires.

Mr. Skaggs conducts materials failure analysis involving overloading, fractures, fatigue, corrosion, and related failure mechanisms. He has casework experience involving pipes and pipe fitting failures, fire protection system components, and construction materials. Additional product failure analysis includes mechanical equipment, electrical controls, weld failures, household appliances and a variety of automotive components. He is experienced with various types of materials including metals, plastics, composites, ceramics, concrete and asphalt. He investigates fires, water damage, personal injury, industrial accidents, vehicle accidents, aircraft failures, structural failures, and electrical failures. He conducts a wide range of product tests and consults to industry on product design and materials selection. He is experienced with welding and joining processes, materials selection and usage, light and electron microscopy, materials characterization, internal ballistics and mathematical modeling.

In addition, Mr. Skaggs evaluates accidents involving slip, trip and fall, human factors, building code and equipment safety, including sound and light evaluations, stairways and handrail configurations, trip hazards and slip resistance of surfaces. He is certified in the use of the English XL Variable Incidence Tribometer.



Mr. Skaggs applies his broad range of capabilities and expertise to failure analysis and problem solving across a broad range of products and situations, including:

- Heavy Equipment
- Lifting Equipment
- Fasteners and Fastening Systems
- Vehicles and Components
- Vehicle Air Bag Systems
- Automotive Systems
- Metallurgical Analysis
- Towers and Structures
- Water Intrusion/Water Damage
- Electric and Micro Electrical Components

- Piping and Hose Failures
- Industrial Accidents
- Household Appliances
- Pressure Vessels
- Medical Devices
- Manufacturing Problem Solving
- Weld Parameters and Failures
- Construction Materials and Methods
- Nuclear Components
- Materials Selection

Mr. Skaggs also applies his experience in combustion science and mathematical modeling to prepare and review mathematical models of fire scenarios, using point, zone, and field models. He has prepared large-scale fire models for use in litigation, reviewed fire models prepared by others, and performed real-world burn testing to corroborate modes.

**EDUCATION**

**Colorado School of Mines,** Master of Science, Metallurgical and Materials Engineering, Golden, CO, 1997
**Colorado School of Mines,** Bachelor of Science, Metallurgical and Materials Engineering, Golden, CO, 1994

**LICENSES, CERTIFICATIONS AND REGISTRATIONS**

**Registered Professional Engineer,** Colorado, No. 37247
**Certified Fire and Explosion Investigator,** NAFI, No. 11865-5968
**Certified Operator,** English XL Variable Incidence Tribometer, EXCEL TRIBOMETERS, LLC, No. 100151

**PROFESSIONAL EXPERIENCE**

**CASE Forensics,** Denver, CO, 2001 to present
*Principal, Metallurgical and Materials Engineer*
Forensic engineer providing technical and litigation support to insurance, industry, and the legal profession. Failure analysis, investigations, testing, mechanical analysis, materials characterization, standards and code review. Design and assembly review.



C ASE Forensics Corporation                                    Page 23
Herrera v M&G Duravent Group *et al*                          June 1, 2016
United States Wyoming District Court                    Our File No: 209168
No. 15-CV-128-F

**OEA, Inc./Autoliv Inflaters,** Aurora, CO, 1997 to 2000
*Principal Engineer, Product Development, 1999 to 2000*
Design authority responsibility and principal technical customer contact for an automotive air bag product with over $30MM in annual global sales. Manager for the design team developing new automotive safety products. Primary engineer responsible for failure analysis and resolution. Managed cross-functional teams on projects realizing over $1MM annually in cost savings. Performed customer and industry standards review, contract and quotation analysis. Maintained signature authority for change control, drawing/bill of materials (BOM) release and project budgets. Implemented and reviewed enterprise-wide systems ensuring QS-9000 compliance. Oversaw all aspects of product life-cycle, from R&D and prototype, through pilot, production and sustaining engineering.

*Project Engineer, 1998 to 1999*
Primary product design engineer.  Performed product/component analyses and testing. Performed sustaining engineering and product development functions. Designed, validated, and implemented new component designs and design modifications. Ensured product development execution per established quality procedures.  Provided technical customer and applications support.  Performed mechanical analysis, failure analysis, DFMEA/PFMEA, process and product design review. Executed validation testing to global, federal and industry standards.

*Manufacturing / Welding Engineer, Manager Analysis Laboratory, 1997 to 1998*
Development of assembly procedures and performance monitoring systems. Wrote specifications, led procurement team and oversaw installation of enterprise-critical process equipment.  Managed analysis laboratory and staff of technicians.

**RELATED EXPERIENCE**

**Colorado School of Mines, Golden CO**, Golden, CO. 1989-1997, (B.S. and M.S., Metallurgical and Materials engineering)
*Masters' Thesis Project*
Surface preparation effects on weld quality in laser beam welded titanium alloys.  Sponsored by the American Welding Society and the Defense Advance Research Project Agency (DARPA).

*Teaching Assistant*
  ▪ Probability and Statistics, Summer Field Sessions, 1994-1997

*Senior Thesis Project Advisor*



C ASE Forensics Corporation                                        Page 24
Herrera v M&G Duravent Group *et al*                               June 1, 2016
United States Wyoming District Court                    Our File No: 209168
No. 15-CV-128-F

**PUBLICATIONS**

**Skaggs J.,** Lewis K., Joyce D. (2009) Case Study: Fire Evolution in Infant Bedding Materials, Smoke Detector Response Time, and Tenability. Fire and Materials 11th International Conference & Exhibition, p. 921-930, Interscience Communications, London, UK.

**Skaggs, J.** (2005)  Finding Failures Before They Happen.  Claims Magazine, June 2005.

**Skaggs, J.** (2004) Infrared Cameras Illuminate Property Damage Investigations. Claims Magazine, August 2004.

**Skaggs J.,** Lewis, K., Gaw, K., Challman T., Drew, K. (2004) Metallurgy and Origin/Cause. Fire Findings Special Report, Vol. 12, No. 3, p. 7-10.

**Skaggs, J.** (2003) NHTSA Warns of Defective Cargo Trailers.  Colorado Claims Association Magazine.

**PRESENTATIONS**

**Skaggs, J**  Advanced Techniques in Slips and Falls
- Colorado CPCU Society, Jan. 2014
- Southwest Transit Association, July 2015
- Co-Prima, October 2014

**Skaggs, J**  Baby, It's Cold Outside, Freezing Pipes, Cold Weather, and Wintertime Pipe Breaks
- Connect Force – Difference Makers Conference, New Orleans LA, 2015, March 2015
- Oklahoma Bar Association, May 2015
- NCC / AmWins, Atlanta GA, September 2014

**Skaggs, J.** (2009)  Case Study:  Fire Evolution in Infant Bedding Materials, Smoke Detector Response Time, and Tenability, Fire and Materials 11th International Conference and Exhibition, San Francisco, CA,  January 2009.

**Skaggs, J.** (2006) Truck Day: 4 hours of field lectures and hands on training on the rules, regulations and workings of big rigs. Developed and presented solely by CASE Forensics staff to legal, insurance and industry representatives, Golden, CO, September 2006.

**Skaggs, J.** (2004) Infra-Red Examinations, Rocky Mountain Property Claims Association.



C ASE Forensics Corporation                                      Page 25
Herrera v M&G Duravent Group *et al*                          June 1, 2016
United States Wyoming District Court                    Our File No: 209168
No. 15-CV-128-F

**Skaggs, J.** (2004) Forensic Engineering Investigations: An Engineer's Perspective
- Kurtz & Peckham, ATL, September 2004
- Safeco Insurance Company, September 2004
- Markusson, Green & Jarvis PC, September 2004
- Harris Karsteadt Jamison & Powers PC, July 2004
- Colorado Springs Claims Association, February 2004
- Harris Karsteadt Jamison & Powers PC, January 2004

**Skaggs, J.** (2003) Micro Biologically Influenced Corrosion, ASM International, Rocky Mountain Chapter Meeting.

**Skaggs, J.** (2003) Low Speed Impact with Crash Data Retrieval System (CDR) Demonstration, Farmers Insurance.

**CONTINUING EDUCATION AND TRAINING**

- *Understanding Post-Flashover Fire Behavior,* Carmen & Associates Fire Investigation, 2009
- *Fire and Materials 11th International Conference and Exhibition,* San Francisco, CA, 2009
- *Fire Investigation Techniques,* 57th Annual Training Conference, IAAI, 2006
- *Commercial Vehicle Braking Systems,* SAE International, 2003
- *Investigation of Gas and Electric Appliance Fires,* Lake Michigan College, Fire Findings Laboratories, 2002

**SOCIETIES AND MEMBERSHIPS**

American Society of Metals International, Rocky Mountain Chapter (ASM)
      Chairman, 2003-2004
      Vice Chairman, 2002-2003
American Society for Testing & Materials (ASTM)
      Voting Member of ASTM F13.5 Committee
International Association of Arson Investigators (IAAI)
National Association of Corrosion Engineers (NACE)
National Association of Fire Investigators (NAFI)



C ASE Forensics Corporation                                      Page 26
Herrera v M&G Duravent Group *et al*                          June 1, 2016
United States Wyoming District Court                   Our File No: 209168
No. 15-CV-128-F

## 6.  TESTIMONY RECORDS

**Joseph D. Skaggs, PE, CFEI**
**Principal, Metallurgical/Materials Engineer**
**Testimony List**

| Deposition | Mediation | Other | Trial | Court | Style of Case |
|---|---|---|---|---|---|
| 5/12/15 | | | | District Court, City & County of Denver, State of CO | Robert and Elizabeth Barnes v Sears Roebuck & Co 13-CV-35319 |
| 2/12/15 | | | | District Court, City & County of Denver, State of CO | Kimberly Zavala/Wells Fargo NA v Brink's Inc. 2014-CV-30231 |
| 9/18/14 | | | | US District Court, District of CO | Heinrich v Jeg's No. 13-CV-01899-PAB-GPG |
| 11/25/13 | | | | San Francisco County Superior Court | Perez v Kleege Industries, Inc., File No. 5736-3-10 |
| 10/1/13 | | | | US District Court, Southern District of Florida, Miami Division | Rosalind Russ v Berchtold Corporation, Mobile Medical International Corporation and United States of America |
| 6/11/13 | | | | Wake County | Choate Construction Co. v Watco Corporation v Southern Industrial Solutions, Inc., Water Control Services, Inc., Ferguson Enterprises, Inc. of Virginia, Ferguson Enterprises, Inc. |
| 2/28/12 | | | | Linn County | State of Oregon v Joy Marie Cronin, OR No. 11081348 |
| | | | 11/15/12 | Jefferson County | McCartney v Geinitz, Rizzzuo, RealNet Co. CO No. 2011C48897 |
| | | | 11/08/12 | Jefferson County | Lane v Safeway Inc. & Park & Cart, CO No. 2011CV3635 |
| | 8/15/12 | | | | Bittner v Ince, Gilpin County, CO No. 2011cv59, Div. G |
| 6/14/12 | | | | US District Court, Western District of WA at Tacoma | Robert A Weiser v. Evergreen International, SA, Panama No. CV10-5883-BHS |
| 2/14/12 | | | | District Court, City & County of Denver | Kinsey v. Dillon Companies dba King Soopers |
| 7/13/11 | | | | US District Court, District of CO | American Compensation Insurance Co. v. MTD Products, 09-cv-02934-PAB-BNB |



C ASE Forensics Corporation                                    Page 27
Herrera v M&G Duravent Group *et al*                           June 1, 2016
United States Wyoming District Court                           Our File No: 209168
No. 15-CV-128-F

| Deposition | Mediation | Other | Trial | Court | Style of Case |
|---|---|---|---|---|---|
| | | 06/29/10 | 08/04/10 | District Court, Summit County, State of CO | Sexton v. Kavcak. 2009 CV1212 |
| 12/15/2009 | | | | Superior Court of WA, King County | Martha Velazquez & Jamie Cisneros v. Eric & Ruth Johnson, dba Tara Apartments |
| 10/12/2009 | | | | District Court, Weld County, State of CO | EMC Insurance Companies as subrogee of Weld Food Bank v. Heatcraft Refrigeration and Great Lakes Hotel Supply. 06CV695, Div 10. |
| 9/15/2009 | | | | 24th Judicial District Court, Parish of Jefferson, State of LA | Gwendolyn Jacobs v. Bommer Industries et al. No. 630-558, Div H. |
| 9/9/2009 | | | | District Court, State of KS | Ricky Markham v. BTM Corporation, a Michigan Company. 08-4032-SAC |
| 8/26/2009 | | | | District Court, Arapahoe County, State of CO | Merry Fix v. Arapahoe Bowling Center LTD, a Colorado Limited Partnership & Frederic M. Gensch and Vernon F. Gensch. 2008CV1482, Div 407. |
| 7/20/2009 | | | | District Court, Arapahoe County, State of CO | Merry Fix v. Arapahoe Bowling Center LTD, a Colorado Limited Partnership & Frederic M. Gensch and Vernon F. Gensch. 2008CV1482, Div 407. |
| 12/12/2008 | | | | District Court, Garfield County, State of CO | Krauth & State Farm v. Hansgrohe Inc. & Broen SA. 2008 CV 18, Div. A. |
| 2/27/2007 | | | | Superior Court of WA, King County | Kelly v. Diverstech Holdings, Ltd. dba Apollo Precision Tools; Target Stores, Inc., Docket 06-2-04702-8 SEA |
| 10/16/2006 | | | | District Court, State of CO | State Farm Fire and Casualty Company v. High Mark Development Inc., Kinder Morgan Inc. and High Mark Development Inc., Kinder Morgan Inc v. R.W. Lyall & Company, Inc. |



C ASE Forensics Corporation                                       Page 28
Herrera v M&G Duravent Group *et al*                              June 1, 2016
United States Wyoming District Court                      Our File No: 209168
No. 15-CV-128-F

---

**7. COMPENSATION**

| **Investigator** | **Standard Rate** | **Testimony Rate** |
|---|---|---|
| Barr, Jeffrey P., AIA, CCCA | $205 per hour | $310 per hour |
| Biggerstaff, Neil L., PE, CFI, CFEI | $260 per hour | $390 per hour |
| Bott, June H., Ph.D. | $195 per hour | $295 per hour |
| Bowen, Jimmy W., CFI | $150 per hour | $225 per hour |
| Bramhall, Michael A., PE, SE, LEED®AP | $220 per hour | $330 per hour |
| Cochran, Scott M., PE, CFEI, CVFI | $190 per hour | $285 per hour |
| Colman, Rick D., AIA | $175 per hour | $265 per hour |
| Faino, Nicolaus, MSME | $180 per hour | $270 per hour |
| Faino, Nicolaus, MSME as SolidWorks Operator | $225 per hour | NA |
| Gunsolley, Steve, CFEI, CVFI, PI | $150 per hour | $225 per hour |
| Hallet, Sean M., PE | $210 per hour | $315 per hour |
| Harris, Jeff, AIA, CXLT | $195 per hour | $295 per hour |
| Harris, Warren F., B.S.Chem., B.S.,Geo., PI | $205 per hour | $310 per hour |
| Hopp, Jeffrey A., PE | $180 per hour | $270 per hour |
| Iseke, Warren J., BS, BA, CFEI | $160 per hour | $240 per hour |
| Jager, Daniel M., CFI, CFEI | $165 per hour | $250 per hour |
| Jones, Dennis L., CFI, PI | $150 per hour | $225 per hour |
| Joyce, Daniel V., PE, CFEI, PI | $235 per hour | $355 per hour |
| Kephart, David L., PE | $195 per hour | $295 per hour |
| Kitchens, John R., CFI, CFEI, CVFI, PI, CFM | $165 per hour | $250 per hour |
| Lauderbach, Robert S., PE | $195 per hour | $295 per hour |
| Liebman, Alec J., Forensic Investigator | $130 per hour | $195 per hour |
| Liebman, Mark A., Senior Forensic Investigator | $225 per hour | $340 per hour |
| Lewis, Kevin H., PE, CFI, CFEI, CVFI, CFII, PI | $315 per hour | $470 per hour |
| Mack, Stephen A. W., PE | $190 per hour | $285 per hour |
| Marksthaler, Jeffrey R., PE | $210 per hour | $315 per hour |
| McCary, Jason L., Ph.D. | $215 per hour | $325 per hour |
| McClelland, Matt, Evidence & Laboratory Technician | $130 per hour | $195 per hour |
| Morris, Hugh G., PE | $205 per hour | $310 per hour |
| Murphy, Danielle M., Ph.D., CFEI | $195 per hour | $295 per hour |
| Murphy, Danielle M., Ph.D., CFEI as SolidWorks | $245 per hour | NA |



C ASE Forensics Corporation                                                Page 29
Herrera v M&G Duravent Group *et al*                                      June 1, 2016
United States Wyoming District Court                                Our File No: 209168
No. 15-CV-128-F

| **Investigator** | **Standard Rate** | **Testimony Rate** |
|---|---|---|
| Newbery, Trevor M., PE, ACTAR, ASE, CFEI, CVFI | $250 per hour | $375 per hour |
| Paris, Andrew J., PE | $235 per hour | $355 per hour |
| Pignotti, Steven P., B.S.M.E. | $225 per hour | $340 per hour |
| Ramey, Shannon D., PE, CFEI | $235 per hour | $355 per hour |
| Ray, Shawn P., PE, ACTAR, ASE, CFII, CFEI, CVFI | $260 per hour | $390 per hour |
| Rayment, Karen, MSEE, MBA, PE, PMP, CFEI | $250 per hour | $375 per hour |
| Rice, Craig R., PE, CFI, CFEI, CVFI, PI | $235 per hour | $355 per hour |
| Rice, Kenneth G., CFI, CFEI, CVFI, PI, CFM, CBO | $150 per hour | $225 per hour |
| Rickauer, John D., PE | $205 per hour | $310 per hour |
| Roberts, Scott L., CFI, CFEI, CVFI, PI | $155 per hour | $235 per hour |
| Sanders, P. Travis, PE, SE | $195 per hour | $295 per hour |
| Scheiff, Sebastian, PE, CFEI (Electrical Engineer) | $205 per hour | $310 per hour |
| Skaggs, Joseph D., PE, CFEI, CXLT | $235 per hour | $355 per hour |
| Smith, Ron L., CFEI, CVFI, PI | $150 per hour | $225 per hour |
| Sticht, Wade R., PE, CXLT | $175 per hour | $265 per hour |
| Stone, John M., CFI, CFEI, CVFI, PI | $150 per hour | $225 per hour |
| Templeton, Bryan P., Ph.D., PE | $260 per hour | $390 per hour |
| Templeton, Bryan P., Ph.D., PE as SEM Operator | $355 per hour | NA |
| Thomas, Scott J., PE | $195 per hour | $295 per hour |
| Topinka, Alan C., PE, CXLT, CFEI, PI | $315 per hour | $470 per hour |
| Warren, Chris L., BS-FI, CFEI, CVFI | $150 per hour | $225 per hour |
| Way, Paul T., PE, CFI, CFEI, PI | $315 per hour | $470 per hour |
| Yamashita, Steven M., BS | $225 per hour | $340 per hour |
| Zachry, R. Allen, PE, SE | $195 per hour | $295 per hour |
| Zeck, Donald F., CXLT, PI | $170 per hour | $255 per hour |
| X-ray Technician (1 hour minimum charge) | From $245 per | |
| Test Engineer | From $165 per | |
| Engineer/Architect/Scientist/Investigator | From $125 per | |
| Technician | From $95 per hour | |
| CAD Drafter | From $85 per hour | |
| Research/Project Assistant | From $80 per hour | |
| Administrative Assistant | From $55 per hour | |



C ASE Forensics Corporation                                    Page 30
Herrera v M&G Duravent Group *et al*                          June 1, 2016
United States Wyoming District Court              Our File No: 209168
No. 15-CV-128-F

## 8.  EXHIBITS TO BE USED AT TRIAL

CASE intends to use any of the photographs, drawings, schematics or other information contained in this report and our project file to illustrate our opinions. Physical samples of the evidence or exemplars may also be used as necessary.

