Joseph P. McGill (admitted pro hac vice)
Jennifer A. Cupples (admitted pro hac vice)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, MI  48152
(734) 742-1825; Fax:  (734) 521-2379
Email:  jmcgill@fbmjlaw.com;
        jcupples@fbmjlaw.com

Judith A. Studer, Attorney No. 5-2174
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, WY  82601
(307) 235-6681; Fax (307) 234-5099
Email:  jstuder@schwartzbon.com

*Attorneys for Defendant Triangle Tube*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| FRANCISCO L. HERRERA and JOANNA HERRERA, Co-Wrongful Death Representatives, for the exclusive benefit of the beneficiaries of MONICA HERRERA, deceased, who have sustained damages from her wrongfully caused death, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | Case No.:  2:15-cv-00128-NDF |
| GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in their individual capacities as Trustees of the BUCKINGHAM FAMILY TRUST; and GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, as individual defendants; and WYOMING MECHANICAL, INC., a Wyoming Corporation; TRIANGLE TUBE/PHASE III CO. INC., a New Jersey Corporation; and M&G GROUP DURAVENT, INC., a New York Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# CORRECTED EXHIBIT K
**TO TRIANGLE TUBE'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIMS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2016, I served **CORRECTED EXHIBIT K TO TRIANGLE TUBE'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' STRICT PRODUCTS LIABILITY CLAIMS** upon:

| | |
|---|---|
| David Lewis<br>P. O. Box 8519<br>Jackson, Wyoming 83002<br>davelewis@bresnan.net | Christopher R. Reeves<br>Dick Waltz, Esq.<br>Waltz Law Firm<br>1660 Lincoln Street, Ste. 2510<br>Denver, Colorado 80264<br>creeves@waltzlaw.com<br>DWaltz@WaltzLaw.com |
| Julie Tiedeken<br>Sean W. Scoggin<br>P. O. Box 748<br>Cheyenne, Wyoming 82003<br>jtiedeken@mtslegal.net<br>sscoggin@mtslegal.net | Katherine L. Mead, Esq.<br>P.O. Box 1809<br>Jackson, Wyoming 83001<br>kate@meadlaw.net |

via the Court's ECF filing system.

                                                  /s/Cheryl E. Ballew
                                                    Cheryl E. Ballew

Case 2:15-cv-00128-NDF Document 132 Filed 09/07/16 Page 3 of 10

MARK PASSAMANECK, PE                                              July 26, 2016
HERRERA vs. BUCKINGHAM                                                        1

```
 1   J0393061JW

 2   IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF WYOMING
 3
     Civil Action No. 15-CV-128-F
 4   _____

 5   FRANCISCO L. HERRERA and JOANNA HERRERA, Co-Wrongful
     Death Representatives, for Exclusive Benefit of the
 6   Beneficiaries of MONICA HERRERA, deceased, who have
     sustained Damages from her wrongfully caused death,
 7
     Plaintiffs,
 8
     vs.
 9
     GREGORY BUCKINGHAM and DEBORAH BUCKINGHAM, but in
10   their individual capacities as Trustees of the
     BUCKINGHAM FAMILY TRUST; and GREGORY BUCKINGHAM and
11   DEBORAH BUCKINGHAM as Individual Defendants; and
     WYOMING MECHANICAL, INC., a Wyoming Corporation;
12   TRIANGLE TUBE/PHASE II CO., INC., a New Jersey
     Corporation; and M&G DURAVENT, INC., a New York
13   Corporation,

14   Defendants.
     _____
15

16

17        VIDEOTAPED DEPOSITION OF MARK PASSAMANECK, PE

18                       July 26, 2016

19

20

21   Pursuant to Notice taken on behalf of Defendant M&G
     DuraVent, Inc., at 1660 Lincoln Street, Suite 2510,
22   Denver, Colorado 80264, at 9:11 a.m., before
     Jodi M. Wagner, Registered Professional Reporter and
23   Notary Public within Colorado.

24

25
```



Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 4 of 10

MARK PASSAMANECK, PE                                      July 26, 2016
HERRERA vs. BUCKINGHAM                                             182

```
 1        Q.   Is it your belief that Wyoming Mechanical
 2   knew or should have known that they were required to
 3   follow applicable codes, industry standards, and
 4   Triangle Tube's instructions?
 5        A.   Yes.
 6        Q.   Is it your belief that Wyoming Mechanical
 7   failed to notify Greg or Deborah Buckingham of the
 8   danger of vent separation in relation to potential
 9   exposure to carbon monoxide and to instruct them to
10   turn the boiler off until Wyoming Mechanical had an
11   opportunity to visit the site and investigate the
12   problem?
13             MS. TIEDEKEN:  Object as to form.
14             (The pending question was read back.)
15        A.   Yes.
16        Q.   (BY MR. McGILL)  And if I recall your prior
17   testimony, you have no independent data, as we've
18   talked about, to support a conclusion that there's any
19   specific defect in the Triangle Tube boiler that was a
20   cause of Monica Herrera's death?
21             MS. TIEDEKEN:  Object to the form.
22        Q.   (BY MR. McGILL)  You can answer.
23        A.   I have information and data from Triangle
24   Tube that is consistent with hard starts and problems
25   with the boiler that I do believe contributed to it.
```



800.211.DEPO (3376)
EsquireSolutions.com

Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 5 of 10

MARK PASSAMANECK, PE                                         July 26, 2016
HERRERA vs. BUCKINGHAM                                              183

1  I haven't reviewed all of it yet because I have just
2  gotten some of it.
3       Q.   Have you conducted any independent tests
4  aside from that, from those documents, to support your
5  conclusion of a defect in the Triangle Tube boiler?
6       A.   Not at this time.
7       Q.   Looking at your initial report from January
8  2016.  I believe it's marked as Exhibit 215.
9       A.   215?
10      Q.   Yes, sir.
11      A.   Okay.
12      Q.   Are your assumptions at all stated in --
13 well, first of all, in the context of providing an
14 expert report, as you've done in this litigation, do
15 you understand what the term "assumptions" means?
16      A.   I do.
17      Q.   And are your assumptions stated anywhere in
18 Exhibit 215?
19      A.   I did not make any assumptions in that case.
20      Q.   And then with respect to -- same question
21 concerning your -- I'll just describe them as two
22 supplements to your initial report.
23           Are your assumptions stated in those
24 reports?
25      A.   I'm not basing anything on assumptions.



Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 6 of 10

MARK PASSAMANECK, PE                                      July 26, 2016
HERRERA vs. BUCKINGHAM                                              190

1  reference -- you reference Dr. Cuzzillo and the design
2  of the ignitor and the cabinet of the Buckingham
3  boiler.  It's in the second full paragraph.
4      A.    Second full paragraph, page 3?
5      Q.    Of your January 4, 2016, report.
6      A.    Okay.
7      Q.    Other than -- the way you term it is
8  Cuzzillo -- "Cuzzillo believes" is the way you term
9  it.
10           My question is do you have any --
11     A.    Please let me find that real quick.
12     Q.    Oh, I'm sorry.
13     A.    I'm sorry.  I don't know where you are.
14     Q.    Closer to the middle of the paragraph.
15           MS. TIEDEKEN:  Are you looking at "However,
16  based on his deposition"?
17           MR. McGILL:  Yep.
18           MS. TIEDEKEN:  It's in the middle of that
19  paragraph.
20           THE DEPONENT:  Okay.  I got it.  I'm sorry.
21     Q.    (BY MR. McGILL)  So you're referencing
22  Dr. Cuzzillo's deposition on those issues, the ignitor
23  and the cabinet.  And I think you've already answered
24  this question, but just to be certain.
25           You haven't conducted any independent



Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 7 of 10

MARK PASSAMANECK, PE                                    July 26, 2016
HERRERA vs. BUCKINGHAM                                           191

1  testing to support those conclusions there in your
2  report about the ignitor and the cabinet?  You don't
3  have any independent data other than what Dr. Cuzzillo
4  is saying in his deposition?
5      A.   And, well, in the test data from the lab
6  exam.  Otherwise, no.
7      Q.   And the test data you're talking about, the
8  recirculation -- the pouring of the exhaust fumes
9  underneath the cabinet?
10     A.   Yes.
11     Q.   And that's the test that you admit was not
12 conducted pursuant to any ANSI standard; correct?
13     A.   Yes.
14     Q.   On page 4 of your report you talk about CO
15 concentration levels increasing.
16     A.   Okay.
17     Q.   Again, you're referencing Dr. Cuzzillo?
18     A.   Which paragraph are you in?
19     Q.   The second paragraph.
20     A.   Okay.
21     Q.   So the last sentence reads:  "The time frame
22 for the incident CO increase was not discussed or
23 opined upon by Mr. Cuzzillo, nor was the curve the CO
24 concentration levels would have followed."
25          You mentioned that in your initial record.



Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 8 of 10

MARK PASSAMANECK, PE                                    July 26, 2016
HERRERA vs. BUCKINGHAM                                           192

```
 1   Have you done any further study or research to shore
 2   up that particular point?
 3        A.   No.
 4             MS. TIEDEKEN:  Object to the form.
 5        Q.   (BY MR. McGILL)  Is there any question in
 6   your mind that Wyoming Mechanical was aware of the
 7   flue gas leak from the Buckingham boiler as a result
 8   of the venting becoming detached prior to Monica
 9   Herrera's death?
10        A.   No.
11        Q.   Are there prudent safety measures that you
12   are suggesting that should have been taken by either
13   the Buckinghams or Mr. Schuler that could have
14   prevented the CO exposure to Monica Herrera?
15        A.   Other than not being in the house, no.
16        Q.   So nothing else that Mr. Schuler or
17   Mr. Buckingham could or should have done?
18        A.   Well, in one of my reports -- I'll find it
19   for you.  Page 4, on the very bottom, the very last
20   sentence.
21             MS. MEAD:  Which report, please?
22             THE DEPONENT:  I'm sorry.  January 4 report,
23   page 4, the very last sentence.
24        Q.   (BY MR. McGILL)  I see it.  It reads:  "In
25   addition, the Buckinghams could have made a call to
```



1    Q.   And that would be the -- well, what are the
2    additional things that you've collected that you
3    contend address these additional elements that are
4    referenced in your report?
5    A.   Well, the first is the paragraph below, as
6    well as hard starts of the boiler.
7    Q.   Okay.  Have you conducted any -- the
8    paragraph below talks to the issue of thermal cycling,
9    and you mention hard starts of the boiler.  And I
10   think you've answered the question regarding the hard
11   starts and the collection of data.
12        But have you collected any independent data
13   regarding the issue of thermal cycling as it may or
14   may not have had an impact with respect to the
15   Buckingham boiler and Monica Herrera's death?
16   A.   No.
17   Q.   Your second supplemental report, which is
18   217, page 2.  There's a sentence in there about
19   recirculation of gas in the boiler cabinet.
20        And, again, just to be clear, other than
21   what was done in the lab -- at Mr. Freeman's lab, you
22   haven't collected any other data concerning
23   recirculating of carbon monoxide through any Triangle
24   Tube boiler cabinets, have you?
25   A.   No.



Case 2:15-cv-00128-NDF   Document 132   Filed 09/07/16   Page 10 of 10

MARK PASSAMANECK, PE                                          July 26, 2016
HERRERA vs. BUCKINGHAM                                                 196

1    Q.   Do you know what a pressure transducer is?
2    A.   I do.
3    Q.   Have you used any pressure transducers to
4  attempt to measure any delayed ignitions from any
5  Triangle Tube boilers?
6    A.   No.
7    Q.   Have you used any pressure transducers or
8  other such measuring devices to attempt to measure the
9  pressure associated with the type of sound that Greg
10 Buckingham described coming from the Triangle Tube
11 boiler?
12   A.   No.
13   Q.   Would you take a look at Exhibits 199 and
14 200.
15   A.   Okay.  I'm at 199.
16   Q.   Can you identify that document for the
17 record, please.
18   A.   Yeah, this is part of Triangle Tube's
19 testing of the Prestige Solo 250 boiler.
20   Q.   Does that appear to have been prepared by
21 the independent testing agency identified as Intertek?
22   A.   Yes.
23   Q.   And could you look at Exhibit 200, please.
24 Could you identify that for the record, please.
25   A.   Same thing.

