Christopher R. Reeves-Wyoming Bar No. 7-5386
Richard A. Waltz, *Pro Hac Vice*
Waltz/Reeves
1660 Lincoln Street, Suite 2510
Denver, CO 80264
(303) 830-8800

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Francisco L. Herrera, and Joanna Herrera, Co-Wrongful Death Representatives, for exclusive benefit of the beneficiaries of Monica Herrera, deceased.<br>  Plaintiff(s),<br><br>vs.<br><br>Gregory Buckingham and Deborah Buckingham, but in their individual capacities as Trustees of the Buckingham Family Trust; and Gregory Buckingham and Deborah Buckingham, as individual defendants; and Wyoming Mechanical, Inc., a Wyoming Corporation; Triangle Tube/Phase III Co. Inc., a New Jersey Corporation; and M&G DuraVent, Inc., a New York Corporation<br>  Defendant(s). | )<br>)<br>)<br>)<br>) Civil Action No. 15-CV-128-NDF.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## M&G DURAVENT, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

M&G DuraVent, Inc. ("DuraVent"), by and through its attorneys, Richard A. Waltz and Christopher R. Reeves, of Waltz/Reeves, and hereby submits its Reply In Support of Its Motion For Sanctions For Spoliation Of Evidence, and states as follows:

*NOTE: DuraVent files this Reply pursuant to L.R. 7.1(b)(1)(D).  Although the Motion and Reply seek dismissal, in part, they are not filed pursuant to F.R.C.P. 56 and thus, it is unknown at this time if the Court will address this motion at the dispositive motions hearing scheduled for September 29, 2016.*

### A.     Plaintiffs Have Conceded This Motion.

DuraVent's motion was filed August 31, 2016.  Plaintiffs have filed no response to DuraVent's Motion for Sanctions and the relief sought, including precluding Plaintiffs from benefiting from Wyoming Mechanical, Inc.'s, (WYMech), and others' destruction of evidence.  DuraVent's motion should be granted as to Plaintiffs, including dismissal of all claims.

### B.     Evidence Has Been Spoliated and Destroyed To The Prejudice of DuraVent.

Co-Defendant WYMech does not dispute that spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir.2007).  WYMech ignores and otherwise concedes its knowledge, actual or constructive, of an imminent claim and instead focuses on prejudice to DuraVent.

Contrary to WYMech's arguments, evidence was destroyed to the prejudice of DuraVent.  WYMech admits that the configuration of the throttle screw was changed.  It makes no comment and otherwise ignores that the gas outlet pressure screw was changed.  The boiler's internal parts were removed and then re-installed without any record of whether they were installed as originally found.  The results? It is undisputed that no one has been able to get the boiler to burn/explode at the levels described by the Buckinghams and/or at levels required for vent pipe

2

dislocation while still in place. *See* Motion at Exhibit Z, *Depo. of Skaggs*, at 6:2-19; 156:18-157:5 [DOC 121, attachment 13].

To fray the imposition of sanctions, WYMech's incorrectly focuses exclusively on the vent system in claiming no prejudice to DuraVent and otherwise confuses the issue. WYMech appears to be under the mistaken belief that if the physical condition of the vent pipe can be replicated there is no spoliation of evidence. During DuraVent's expert, Joe Skaggs deposition, WYMech's counsel had the same confusion. Mr. Skaggs corrected counsel and noted that the inability to properly investigate this incident lies not so much with DuraVent's vent, but with the boiler's condition that has been destroyed. *See* Motion at Exhibit Z, *Depo. of Skaggs*, at 96:13-97:17 [DOC 121, attachment 13]. Without knowing the condition of the boiler, one cannot evaluate whether the vent disconnected under normal operating conditions or some extraordinary condition. *Valentine v. Ormsbee Expl. Corp.,* 665 P.2d 452, 462 (Wyo. 1983) (test for product defect is does it perform under normal operating conditions).

WYMech's constrained focus ignores the impact of the boiler, and its alleged severe explosions, on the venting system. The vent system did not disconnect on its own. Rather, it was the forces (thermal and explosive) created by the malfunctioning boiler that allegedly caused the vent pipe to disconnect. The question that may be posed to any jury is: "were the forces exerted on the venting system foreseeable to DuraVent sufficient to create a duty upon it to design its venting products to withstand those forces?" To determine why/how the venting pipe became disconnected one would need to know 1) the temperatures being exerted by the boiler on the vent pipe exhaust, and 2) the force of the actual explosions being exerted on the vent connections. *See* Motion Exhibit Z, *Depo. of Skaggs*, at 160:1-21; 161:22-162:5 [DOC 121, attachment 13].

3

Mr. Skaggs absolutely rejected WYMech's suggestion that the condition of the boiler, as installed, is known today, stating:

> There have been many things altered that prevent determination of the actual operating conditions. I mean, the whole system has been disassembled and brought to Denver, so it's not at all in the same condition it was at the time.

*Id.* at 98:8-12.

Furthermore, he rejected that there is sufficient evidence to permit experts to reconstruct the boiler's settings to evaluate its performance.  Contrary to WYMech's suggestion, he disagreed that the location of the throttle screw as installed is known today.  *Id.* at 94:21-95:19.  And, he denied WYMech's attorney's suggestion that he is able to recreate the boiler's operation settings through video and photos.  *Id.* at 96:8-98:12.  It is for these reasons that Mr. Skaggs did not seek additional testing of the boiler once DuraVent was present at the third and fourth inspections, because, "there are so many differences between the installation at the Buckingham residence and the installation in Freeman's lab...," that the results would not be representative of the actual install.  *Id.* at 101:21-102:21.

In all, the post-incident destruction of evidence by WYMech and others materially changed the condition of the boiler and venting system.  These include: the configuration of the boiler, *Id.* at 98:8-12; no ability to determine the pressures actually exerted on the pipe - even where technical authorities/literature exists, *Id.* at 64:2-19; and all tests were conducted at the wrong altitude rendering the Freeman lab results irrelevant, *Id.* at 162:6-20.   Without this information, the jury will have no basis to determine the amount of forces actually exerted on the vent pipe and whether those were foreseeable or not. WYMech provides no argument of how it or any party, including DuraVent, can now recreate the actual forces that the vent pipe

4

experienced to determine if the forces were within normal operating parameters or something extraordinary, i.e. unforeseeable, sufficient to demonstrate a product defect. Rather they wish to have all experts just adopt the worse-case scenario and work off that figure. Yet, even that has proved impossible, with Plaintiffs' expert originally opining that the forces on the vent pipe were 250 psi, and just last week saying it is likely only 35 psi. So, not even the academic worst-case scenario is available in this case. In all, the evidence necessary for DuraVent to evaluate and mount a defense has been destroyed by the very parties attempting to prosecute DuraVent. They are not entitled to have DuraVent in this litigation when they have deprived it of any ability to mount a defense. Dismissal is therefore proper.

### C.     The Destruction of Evidence Was Culpable Conduct.

WYMech's disconnection, reattachment, staging, and misrepresentations *as to the vent pipe* were not proffered to demonstrate damage to the vent pipe but rather to demonstrate WYMech's culpability. WYMech never confessed or otherwise alerted others to its attempts to mislead others. It was only upon review of the record by DuraVent that the misconduct of WYMech was discovered. WYMech does not deny that it staged certain conditions related to the vent pipe and then affirmatively misrepresented those to the homeowners and others. Indeed, there is no defense for what WYMech did. The severe degree of culpability related to its actions and ultimate destruction of the boiler's configuration demand the harshest of sanctions - dismissal of its cross-claim and Plaintiffs' claims against DuraVent. There is no reasonable and fair relief except dismissal.

WHEREFORE, Defendant M&G DuraVent, Inc. asks that its motion be granted and the appropriate sanctions, including dismissal of all claims, be ordered.

Respectfully submitted this 20[th,] day of September, 2016.

                                            s/Christopher R. Reeves
                                            Richard A. Waltz, Esq.
                                            Christopher R. Reeves, Esq.
                                            Waltz/Reeves
                                            1660 Lincoln Street, Suite 2510
                                            Denver, CO 80264
                                            Telephone: 303-830-8800
                                            Facsimile: 303-830-8850
                                            dwaltz@waltzreeves.com
                                            creeves@waltzreeves.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20[th,] day of September, 2016, a true and correct copy of the above M&G DuraVent, Inc. Reply to Wyoming Mechanical's Opposition To M&G Duravent Inc.'s Motion For Sanctions For Spoliation Of Evidence And Triangle Tube's Joinder In The Motion was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

David G. Lewis, WY Bar. #4-1150
P.O. Box 8519
Jackson, WY 83002
Tel.: (307) 739-8900
Fax: (307) 739-8902
davelewis@bresnan.net
Counsel for Plaintiffs

Katherine L. Mead, WY Bar #5-2432
Mead & Mead
1200 N. Spring Gulch Rd
P.O. Box 1809
Jackson, WY 83001
Tel.: (307) 733-0166
Fax: (307) 733-7590
kate@meadlaw.net
Counsel for Gregory & Deborah Buckingham; Buckingham Family Trust Trustee G Buckingham & Trustee D Buckingham;
Cross Claimants

Julie Nye Tiedeken, - WY Bar #5-1949
Sean W. Scoggin - WY Bar # 6-3263
McKellar, Tiedeken & Scoggin
702 Randall Avenue
Cheyenne, WY 82001
Tel.: (307) 7637-5575
Fax: (307) 7637-5515
jtiedeken@mtslegal.net
sscoggin@mtslegal.net
Counsel for Wyoming Mechanical, Inc.;
Cross Defendant

Cameron S. Walker, Attorney No. 5-1451
Judith A. Studer, Attorney No. 5-2174
Schwartz, Bon, Walker & Studer, LLC
141 South Center Street, Suite 500
Casper, WY 82601
Tel: (307) 235-6681
Fax: (307) 234-5099
cam@schwartzbon.com
jstuder@schwartzbon.com
Counsel for Triangle Tube/Phase III, CO., Inc.
Defendant

Joseph P. McGill (Pro Hac Vice)
Foley, Baron, Metzger & Juip, PLLC
38777 Six Mile Road, Suite 300
Livonia, Ml 48152
Tel: (734) 742-1825
Fax: (734) 521-2379
jmcgill@fbmjlaw.com
Co-Counsel for Triangle Tube/Phase III, CO., Inc.
Defendant

s/Christopher R. Reeves

7