## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KEWEENAW

MARY L. MATHEWS, individually, and as,
Personal Representative of the Estate of
WILLIAM H. FRABOTTA, deceased,

      Plaintiff,

v

DOUGLAS NAKKULA d/b/a MODERN
HEATING & COOLING, JEFF WAATTI,
and ACV TRIANGLE TUBE,

      Defendants.

File No.: 17-775-NO
Hon. Charles R. Goodman

---

**Phillip B. Toutant (P72992)**
Attorneys for Plaintiff
105 Meeske Avenue
Marquette, MI 49855
(906) 226-2580

**Joseph P. McGill (P43770)**
Attorney for Defendant, Triangle Tube
Cambridge Center
38777 Six Mile Road, Suite 300
Livonia, MI 48152
(734) 742-1825/521-2379 (F)

**Glenn W. Smith (P42704)**
Attorney for Defendants, Nakkula & Waatti
BENSINGER, COTANT & MENKES, P.C.
122 W. Bluff Street
Marquette, MI 49855
(906) 225-1000/0818 (F)
gws@bcma.net

---

## DECLARATION OF ATTORNEY GLENN SMITH, ATTORNEY FOR DEFENDANTS, NAKKULA & WAATTI IN RESPONSE TO TRIANGLE TUBE'S MOTION TO SHOW CAUSE FILED IN WYOMING US DISTRICT COURT

---

STATE OF MICHIGAN        {
                          }ss.
COUNTY OF   MARQUETTE    {

The undersigned attorney, if called to testify, would testify consistent with the following:

    1.      That the undersigned is an attorney in good standing registered to practice law in

the State of Michigan and an attorney that is representing Defendants Doug Nakkula d/b/a

1

EXHIBIT 1

Glenn Smith declaration 001

Modern Heating and Cooling and Jeff Waatti in the Keweenaw County Circuit Court action referenced by Triangle Tube in its motion to show cause.

2. That counsel for Triangle Tube files its motion with the improper goal of prohibiting Dr. Cuzzillo from testifying against Triangle Tube in any state or federal court including, but not limited to the Keweenaw County Circuit Court case of *Mathews v Triangle Tube*.

3. That there is no legal or factual basis for such a request under the circumstances, rulings, and stipulated orders of *Mathews v Triangle Tube* case.

4. That further, counsel for Triangle Tube has agreed that discovery produced by Triangle Tube in the *Herrera* matter is also discoverable in the *Mathews* matter provided the *Herrera* "confidential" label is removed. Counsel for Triangle Tube, in the *Mathews* matter absolutely concedes that a document being labeled *Herrera* "confidential" does not bar that document from being discovered in the *Mathews* matter.  Please reference Exhibit A attached, the April 18, 2019, hearing on motion to compel discovery transcript argued before the Honorable Judge Goodman on April 18, 2019, at pages 27-29.

5. That furthermore, upon review of Triangle Tube's motion to show cause pending before this court, it appears that Triangle Tube has failed to produce the order resulting from that hearing of April 18, 2019, wherein it is ordered that "the protective order entered in the *Herrera et al Buckingham et al* US District Court file number 15-CV-128-NDF, shall not be a bar, defense or exception to the Plaintiff and co-Defendant obtaining discovery from Triangle Tube in this subject litigation."  Furthermore, Triangle Tube was ordered and Triangle Tube agreed to produce the deposition transcript of Michael Senk from the *Herrera* case.  See Exhibit B attached.

Glenn Smith declaration 002

6.     That the undersigned does not in any way criticize the Wyoming Court *Herrera* protective orders.

7.     That  it is unjust for Triangle Tube to rely upon the impressions, testimony and transcript of Michael Senk from the *Herrera* matter in the *Mathews* matter and still attempt to sanction Dr. Bernard Cuzzillo by ordering that he cannot testify in the *Mathews* matter as a result of the mental impressions that he formed in the *Herrera* matter.

8.     That the Wyoming Court protective order in *Herrera* does not demand that Dr. Cuzzillo "cleanse his mind" of information he gained as an expert in the *Herrera* matter, or any other matter.  That upon information and belief, Dr. Cuzzillo has purchased an Exemplar Triangle Tube boiler and conducted testing on that boiler utilizing his own thought processes. Again, the protective order in the Wyoming matter does not require that Dr. Cuzzillo "cleanse his mind".

Turning specifically to some of the factual claims in Triangle Tube's motion, it is broadly alleged that Mr. Cuzzillo is in violation of the court's protective order by using confidential information and discovery material, however, upon review of the *Mathews* court order at Exhibit B, and Exhibit C to which Triangle Tube counsel agreed, the *Herrera* protective order is not in any way to be a bar in the *Mathews* matter.

9.     That turning to the factual allegation contained in the motion of paragraph 10, there is also no articulated basis for this claim, and again, Triangle Tube in the spirit of open Michigan discovery, is bound by the order found at Exhibit B.

10.    That turning to paragraph 13 in the motion, Triangle Tube moved for a reaffirming protective order possibly due to the fact that Triangle Tube had left many items public on the

Glenn Smith declaration 003

federal court PACER website.  It further appears likely that the reaffirming protective order was obtained without notice to any of the litigants in the *Herrera* or the *Mathews* matters.

11.     That paragraph 18 of the motion absolutely disregards the impact of the *Mathews* court order at Exhibit B, which was agreed to by counsel for Triangle Tube at Exhibit C.

12.     That paragraph 19 of the motion to show cause demonstrates Triangle Tube's ill-founded attempt to morph a protective order concerning *Herrera* documents into an order that would muzzle all experts that were involved in the *Herrera* matter with the exception of Triangle Tube's experts.  Neither the original protective order nor the reaffirming protective order of May 19, 2019, can be read so broadly.  Again, there is no requirement that Dr. Cuzzillo or anyone else "cleanse their mind".  This effort is clearly demonstrated by the complaint that  Cuzzillo claims that his expertise learned in the *Herrera* case is applicable to the *Mathews* matter with the conclusion being that Dr. Cuzzillo cannot testify in *Mathews*.

13.     That counsel for Triangle Tube, on July 23, 2019, in open court, agreed to the order at Exhibit B which provided that the protective order entered in *Herrera* shall not be a bar, defense or exception to the Plaintiff and co-Defendant obtaining discovery from Triangle Tube in this subject litigation.

14.     That counsel's agreement is found at page 65 line 9 of the July 23, 2019, hearing, several months after Triangle Tube approached this court for a reaffirming protective order, on May 19, 2019.

15.     It should be noted that counsel for Triangle Tube does not include the Exhibit B, order in this instant motion to show cause.  Dr. Cuzzillo testified in *Mathews* after the July 29, 2019 order.   Dr. Cuzzillo testified based upon his own mental impressions, and the declarations

4

and affidavits referred to in the instant motion to show cause were in the public domain available on PACER.

16.     That paragraphs 21-25 of the motion to show cause are clearly inconsistent with Triangle Tube's agreement to the July 29, 2019, order found at <u>Exhibit B</u> of this affidavit.

17.     That Triangle Tube is simply attempting to do an "end-run" around its previously agreed upon order of July 19, 2019 at <u>Exhibit B</u> in an attempt to muzzle a contrary witness.

18.     That Triangle Tube, in essence, is attempting to not simply protect business documents, but instead is attempting to scrub the mental impressions of individuals like Dr. Cuzzillo, who would be in a position to testify critically against Triangle Tube for all matters subsequent to *Herrera*.  There is absolutely no legal basis for such an effort.  The *Mathews* court further clarified the *Hererra/Mathews* issue at the July 23, 2019, hearing at page 46 to 53. See <u>Exhibit D</u>.

19.     That the Keweenaw County Circuit Court judge in *Mathews* appropriately refuses to muzzle any witness that has formed mental impressions and opinions based on past professional experiences and observations.  As a result of Triangle Tube's inability to have Dr. Cuzzillo muzzled in Keweenaw County Circuit Court, Triangle Tube is now inappropriately coming back to this court in an attempt to unfairly muzzle Dr. Cuzzillo with the inappropriate and inapplicable use of the protective orders.

Further, Affiant sayeth not.

5

Glenn Smith declaration 005

Dated: _____January 6, 2020_____

_____
**Glenn W. Smith (P42704)**
Attorney for Defendants, Nakkula & Waatti
BENSINGER, COTANT & MENKES, P.C.
122 W. Bluff Street
Marquette, MI  49855
(906) 225-1000/0818 (F)
gws@bcma.net

Subscribed and sworn to before me on this
__6th__ day of _____January, 2020.

_____
Notary Public -
County of ___MARQUETTE_____
State of Michigan
My commission expires: 4/12/24

6

*Exhibit A*

COPY 

1                    STATE OF MICHIGAN

2          IN THE CIRCUIT COURT FOR THE COUNTY OF KEWEENAW

3  MARY L. MATHEWS, individually,
   and as Personal Representative              E-MAILED *Bernie*
4  of the Estate of WILLIAM H.                 *6-13-19*
   FRABOTTA, deceased,

5
            Plaintiff,                File No. 17-775-NO
6  -vs                               Hon. Charles R. Goodman

7  DOUGLAS NAKKULA d/b/a MODERN
   HEATING & COOLING, JEFF WAATTI,
8  and TRIANGLE TUBE,

9  _____Defendants._____/

10         HEARING ON MOTION TO COMPEL DISCOVERY

11    BEFORE THE HONORABLE CHARLES R. GOODMAN, CIRCUIT JUDGE

12       Eagle River, Michigan, Thursday, April 18, 2019

13 APPEARANCES:

14 For Plaintiff:          PHILLIP B. TOUTANT, P72992
                           105 Meeske Avenue
15                         Marquette, Michigan 49855
                           906-226-2580
16

17 For Defendant:          GLENN W. SMITH, P42704
                           122 W. Bluff Street
                           Marquette, Michigan 49855
18                         (906) 225-1000 - For Nakkula & Waatti

19 For Defendant:          JOSEPH P. McGILL, P43770
                           38777 Six Mile Road, Suite 300
20                         Livonia, Michigan 48152
                           (734) 742-1825 - For Triangle Tube
21

22 RECORDED BY:            PAMELA L. BEGGS, CER-4072

23 TRANSCRIBED BY:         KATHLEEN B. VETTORI, CER-2517
                           Certified Electronic Recorder
24                         P. O. Box 386
                           Hancock, Michigan 49930
25                         (906) 482-5487

                                1

Glenn Smith declaration 007

1    Triangle Tube documents that were stamped "confidential and
2    privileged" with a Bates number and produced in a case in
3    Wyoming, they are not to be produced in this case.   If
4    there's the same identical document that's responsive to
5    your Order in October--
6              THE COURT:   Let me ask--
7              MR. McGILL:   --those documents have been
8    produced already.
9              THE COURT:   Before we go on, are you saying that
10   because a group of lawyers got together in Wyoming and
11   agreed to or stipulated to have an Order entered which
12   would cause certain documents never to be in any other
13   jurisdiction ever seen by the light of day, that that's
14   binding on the 12th Circuit or any other Court in this
15   Country?  In other words, a group of lawyers get together
16   in Wyoming, have a Judge in Wyoming sign something, and
17   that obviates Michigan's Discovery Rule which you quote in
18   your Brief as being liberal and open, and I'm supposed to
19   say that doesn't apply any more because a bunch of lawyers
20   got together in Wyoming and agreed that Michigan Courts
21   can't get this stuff under their Discovery Rules?
22             MR. McGILL:   I'm going to be very clear, Your
23   Honor.  I am absolutely not making that argument.
24             THE COURT:   Okay.  That's--Because when I read
25   some of the pleadings, it was basically I got the

27

Glenn Smith declaration 008

1    impression that it was saying:  This Protective Order bars

2    otherwise discoverable material because we agreed in

3    Wyoming that it won't be disclosed.

4              MR. McGILL:   I'm not--

5              THE COURT:   But that's not what you're saying?

6              MR. McGILL:   I am not saying that.

7              THE COURT:   Okay.

8              MR. McGILL:   I am not saying that.  What I'm

9    trying to say, and I'm obviously not doing it very well,

10   let--Let me just give a for example.

11             THE COURT:   All right.

12             MR. McGILL:   Let's say this is a document.  It

13   has a privileged, confidential--

14             THE COURT:   In *Herrera?*

15             MR. McGILL:   --Bates number.  In *Herrera.*  I'm

16   saying this document can't be produced.  The same document

17   that has the same information has already been produced to

18   Mr. Smith and Mr. Toutant.

19             THE COURT:   All right.

20             MR. McGILL:   It just doesn't have the privileged

21   and confidential *Herrera* document stamp on it, and it's

22   responsive to your earlier Order.

23             THE COURT:   Okay.  So let me--let me--So you're

24   saying that the document that has *Herrera* confidential on

25   it, there is a--the same document that doesn't say *Herrera*

                              28

Glenn Smith declaration 009

1 confidential on it and that document, you're producing?

2    MR. MCGILL:   Has been produced.

3    THE COURT:   Has been produced.   So in effect,

4 then, all of the documents that were produced in *Herrera*,

5 if I'm understanding you correctly, have been produced?

6    MR. MCGILL:   This is where we're--we're going

7 off the track--we're going off the rails a little bit

8 because in *Herrera,* there was a whole different set of

9 issues, a whole different set of Plaintiffs--or Plaintiff

10 and Defendants, whole different alleged failure mechanism,

11 and I'll point out, never a conclusive finding of fact.

12 There was never a finding by a jury that my client did

13 anything wrong.

14    THE COURT:   Okay.

15    MR. MCGILL:   But--So fundamentally, there are a

16 different set of documents because the Order that was

17 entered in this case required specific information

18 concerning delayed ignitions, et cetera, which we produced.

19    THE COURT:   Okay.   All right.

20    MR. MCGILL:   We just didn't produce the

21 documents that said, "*Herrera* confidential," you know,

22 Protective Order with the Bates number from the *Herrera*

23 case.

24    THE COURT:   Okay.   But you produced that

25 document absent that stamp?

29

Glenn Smith declaration 010

Exhibit B



# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KEWEENAW

MARY L. MATHEWS, individually, and as,
Personal Representative of the Estate of
WILLIAM H. FRABOTTA, deceased,

      Plaintiff,

v

DOUGLAS NAKKULA d/b/a MODERN
HEATING & COOLING, JEFF WAATTI,
and TRIANGLE TUBE,

      Defendants.

File No.: 17-775-NO
Hon. Charles R. Goodman

---

**Phillip B. Toutant (P72992)**
Attorneys for Plaintiff
105 Meeske Avenue
Marquette, MI 49855
(906) 226-2580

**Joseph P. McGill (P43770)**
Attorney for Defendant, Triangle Tube
Cambridge Center
38777 Six Mile Road, Suite 300
Livonia, MI 48152
(734) 742-1825/521-2379 (F)

**Glenn W. Smith (P42704)**
Attorney for Defendants, Nakkula & Waatti
BENSINGER, COTANT & MENKES, P.C.
122 W. Bluff Street
Marquette, MI 49855
(906) 225-1000/0818 (F)
gws@bcma.net

---

## ORDER CONCERNING DEFENDANTS, DOUGLAS NAKKULA d/b/a MODERN HEATING & COOLING AND JEFF WAATTI'S, MOTIONS TO COMPEL DISCOVERY ARGUED ON APRIL 18, 2019

---

After having considered motions, briefs, oral arguments, and being otherwise advised in

the premises;

IT IS HEREBY ORDERED that:

FILED ON _7-26-19_
12TH CIRCUIT COURT
KEWEENAW COUNTY,
Glenn Smith declaration MICHIGAN

1.   Triangle Tube shall produce the deposition transcript of Michael Senk, including all exhibits and the video recording of that deposition, from the *Herrera, et al. v Buckingham, et al.*, US District Court File No.: 2:15-cv-128-NDF case, forthwith; and

2.   The Protective Order entered in the *Herrera, et al. v Buckingham, et al.*, US District Court File No.: 2:15-cv-128-NDF, matter shall <u>not</u> be a bar, defense, or exception to the Plaintiff and Co-Defendant obtaining discovery from Triangle Tube in this subject litigation.

Dated: 7/25/2019

**Honorable Charles R. Goodman**
**Circuit Court Judge**

**PROOF OF SERVICE**
I certify that a copy of this instrument was served upon the attorneys of record and/or all interested parties by mailing it to them at their respective business addresses as disclosed by the pleadings, with postage prepaid on the 29th day of July, 20 19. I declare under penalty of perjury, that this statement is true to the best of my information, knowledge and belief.

Court Clerk

Glenn Smith declaration 012

*Exhibit c*



1           STATE OF MICHIGAN

2       IN THE CIRCUIT COURT FOR THE COUNTY OF KEWEENAW

3   MARY L. MATHEWS, individually,
    and as Personal Representative
4   of the Estate of WILLIAM H.
    FRABOTTA, deceased,
5
            Plaintiff,                    File No. 17-775-NO
6   -vs                                   Hon. Charles R. Goodman

7   DOUGLAS NAKKULA d/b/a MODERN
    HEATING & COOLING, JEFF WAATTI,
8   and TRIANGLE TUBE,

9   _____Defendants._____/

10              HEARING ON MOTIONS

11     BEFORE THE HONORABLE CHARLES R. GOODMAN, CIRCUIT JUDGE
                 Special Session held in
12       Houghton, Michigan, Tuesday, July 23, 2019

13  APPEARANCES:

14  For Plaintiff:           PHILLIP B. TOUTANT, P72992
                             105 Meeske Avenue
15                           Marquette, Michigan 49855
                             906-226-2580
16
    For Defendant:           GLENN W. SMITH, P42704
17                           122 W. Bluff Street
                             Marquette, Michigan 49855
18                           (906) 225-1000 - For Nakkula & Waatti

19  For Defendant:           JOSEPH P. McGILL, P43770
                             38777 Six Mile Road, Suite 300
20                           Livonia, Michigan 48152
                             (734) 742-1825 - For Triangle Tube
21

22  RECORDED BY:             PAMELA L. BEGGS, CER-4072

23  TRANSCRIBED BY:          KATHLEEN B. VETTORI, CER-2517
                             Certified Electronic Recorder
24                           P. O. Box 386
                             Hancock, Michigan 49930
25                           (906) 482-5487 or (906) 370-5488

                              1

Glenn Smith declaration 013

1          MR. McGILL:   Thank you very much, Your Honor.

2          MR. SMITH:   There was one more thing that Mr.

3     McGill and I agreed to, and that was the Order concerning

4     Defendant Doug Nakkula, Modern, et cetera's Motion to

5     Compel Discovery argued on April 18, 2019.  Mr. McGill and

6     I have agreed that you may sign the Order as we had

7     originally presented it without the redlining.

8          THE COURT:   Is that correct, Mr. McGill?

9          MR. McGILL:   That is correct, Your Honor.

10          THE COURT:   All right, do you have that Order,

11     Mr.--

12          MR. SMITH:   I do.  I have a--I'll approach.  The

13     front page says, "copy."  It was my copy, but--

14          THE COURT:   Oh, I probably--

15          MR. SMITH:   You do.  You do have it so far.

16          THE COURT:   It would be tucked in here

17     somewhere?

18          MR. SMITH:   Yeah.  Yeah.  You can keep that for

19     reference.

20          THE COURT:   All right, and I'll find it in the

21     original of the file.

22          MR. SMITH:   Okay.

23          THE COURT:   I'll sign it and provide it to the

24     Keweenaw County Clerk.  All right, I'll just keep the copy

25     so I'm sure that I sign the appropriate document.

                          65

Glenn Smith declaration 014



*Exhibit D*



COPY

1          STATE OF MICHIGAN

2      IN THE CIRCUIT COURT FOR THE COUNTY OF KEWEENAW

3  MARY L. MATHEWS, individually,
   and as Personal Representative
4  of the Estate of WILLIAM H.
   FRABOTTA, deceased,

5
            Plaintiff,                    File No. 17-775-NO
6  -vs                                    Hon. Charles R. Goodman

7  DOUGLAS NAKKULA d/b/a MODERN
   HEATING & COOLING, JEFF WAATTI,
8  and TRIANGLE TUBE,

9  _____Defendants._____/

10                  HEARING ON MOTIONS

11   BEFORE THE HONORABLE CHARLES R. GOODMAN, CIRCUIT JUDGE
                 Special Session held in
12        Houghton, Michigan, Tuesday, July 23, 2019

13 APPEARANCES:

14 For Plaintiff:          PHILLIP B. TOUTANT, P72992
                           105 Meeske Avenue
15                         Marquette, Michigan 49855
                           906-226-2580
16
17 For Defendant:          GLENN W. SMITH, P42704
                           122 W. Bluff Street
18                         Marquette, Michigan 49855
                           (906) 225-1000 - For Nakkula & Waatti

19 For Defendant:          JOSEPH P. McGILL, P43770
20                         38777 Six Mile Road, Suite 300
                           Livonia, Michigan 48152
21                         (734) 742-1825 - For Triangle Tube

22 RECORDED BY:            PAMELA L. BEGGS, CER-4072

23 TRANSCRIBED BY:         KATHLEEN B. VETTORI, CER-2517
                           Certified Electronic Recorder
24                         P. O. Box 386
                           Hancock, Michigan 49930
25                         (906) 482-5487 or (906) 370-5488

                              1

1    only entity that is subject potentially to some exclusion

2    concerning destruction would be an insurer, and certainly

3    the party who produced the documents.  So I read this by--

4    by assuming that no attorney, no matter who they

5    represented, was permitted to maintain a copy of the

6    confidential documents.  So if that's the case, all of

7    those *Herrera* documents should be asunder.  So I don't know

8    how they stamped "*Herrera*" if they were all destroyed.

9            MR. McGILL:   They would have been stamped, at

10   least in my client's perspective, "Triangle," and then a

11   number of--I believe, and then "protected/confidential."

12   Something along those lines.

13           THE COURT:    You're saying the documents that

14   went back to Triangle?

15           MR. McGILL:   Yes.

16           THE COURT:    That they produced?

17           MR. McGILL:   Yes.

18           THE COURT:    But let me say this, and I'm just

19   trying to figure out, counsel, what's going on here,

20   because I'm trying to help.  If Triangle produced documents

21   per *Herrera,* I would find it difficult to assume that they

22   gave away their only document and didn't keep for

23   themselves copies of those documents.  In other words, they

24   went to the store clerk and said, "All of our documents

25   that are in our storeroom, just shop those out," and the

46

Glenn Smith declaration 016

1    clerk said, "Should I maintain a copy?"  "No, just get rid

2    of the originals, and we won't maintain a copy."  I find

3    that difficult to fathom.

4         So when those documents would be subject to

5    destruction per this Order, all of the documents that were

6    filed with the Court or provided to other counsel would be

7    destroyed.  And, of course, if Triangle Tube gave away

8    their original document and kept no copy, they would simply

9    no longer exist.  Period.  However, if Triangle Tube kept a

10   copy of what they provided to other counsel and to the

11   Court, Triangle Tube would still have those copies, I

12   assume.

13        That's my first dilemma.

14        My second dilemma, based upon what I've heard is

15   going back to Mr. McGill's initial statement indicating

16   that--and I agree with him, if, for example, an

17   interrogatory or request to produce said, "Give us all the

18   documents ever produced in *Herrera*," I--that would be a

19   bit, in my opinion, over broad.  But then Mr. McGill went

20   on to indicate that if counsel asks for something, they'll

21   get it.  And the reason why 50,000 documents were produced

22   in *Herrera* and 50,000 documents weren't produced here is

23   because the attorneys in *Herrera* asked for more documents

24   than did the parties here, because they asked for the whole

25   product line or something, as indicated by Mr. McGill.

47

Glenn Smith declaration 017

1        So what I'm trying to figure out, counsel, is do

2   we, in fact, have some kind of a controversy here?  In

3   other words, if Plaintiff or Defendant asked for additional

4   documents, whether they are provided in *Herrera* or not, I

5   got the impression from Mr. McGill, they will be produced.

6   It's simply a question of asking, if I understood you

7   correctly.  But it won't be produced to simply a broad,

8   "Give us everything in *Herrera.*"  That's what I understood.

9        MR. McGILL:  I think that's fair, Your Honor.

10       THE COURT:  All right.  Now if that's the case,

11  and Mr. Smith or Mr. Toutant have additional documents or

12  categories of documents that they would request, I got the

13  impression from Mr. McGill that it will be responded,

14  whether those documents were produced in *Herrera* or not.

15  But again, I'm a little confused as to the destruction

16  issue because when I read that Protective Order, and I read

17  it over a number of times, I just assumed after reading it

18  that even you, Mr. McGill, didn't have them anymore.

19       So I guess it comes down to:  Do we have a

20  controversy or do we not?

21       MR. McGILL:  I don't think we do, Your Honor.  I

22  think that to date, we've been responsive with respect to

23  the records we've been required to produce pursuant to the

24  Order that was entered, I believe, in November of 2018,

25  meaning, records described in that Order from January 1st,

48

1    2010 forward.    The search for records did not predate that

2    date.

3              THE COURT:    So I gather, Mr. Smith, if you wish

4    to have additional records, whether they're *Herrera* records

5    or whether they're not *Herrera* records, then you will form

6    a question in the form that Mr. Shenk--is that his name,

7    Senk, or whatever?

8              MR. McGILL:    Senk.

9              THE COURT:    --made reference to during the

10   course of his deposition, you would be provided with

11   substantially more documentation.    That's what I gathered.

12             MR. SMITH:    I would--Okay, I--I would hope

13   you're correct, Your Honor, in your interpretation of what

14   Mr. McGill is saying.   I--The controversy we do have:   You

15   asked do we have a controversy or not.    I still believe Mr.

16   McGill's redlining is improper, and that's what you had

17   gotten to at our last hearing where he agreed that simply

18   because it has something to do with *Herrera*, it's not going

19   to be a defense to production.

20             THE COURT:    That's--that's--I don't think, and

21   correct me again if I'm wrong, and I'm listening to

22   everything everybody is saying right now.   I don't think

23   whether a document is a part of *Herrera* or not is a

24   relevant issue from what I gather.   If--First of all, they

25   should be destroyed.   Now if they're destroyed, they're

                                49

1    destroyed.  And now we have a set of documents possessed by

2    Mr. McGill's client that you have access to per discovery.

3    *Herrera* documents, as far as I can read from this

4    Protective Order, is no longer relevant because they're

5    burned.  That case is over, those documents have been

6    destroyed, and in my view, it's no longer an issue.

7           Now we have documents possessed by Triangle Tube,

8    or possessed by Modern Heating, or whoever, and they're

9    subject to discovery.  I don't know, when I read this

10    Protective Order the last six times, why we're even talking

11    about *Herrera* because according to what I've read, all the

12    *Herrera* documents per the Protective Order that was signed

13    by the Federal Judge in Wyoming and signed by all the

14    counsel involved in that case destroyed them.  So what are

15    we talking about?  *Herrera* documents, I suppose we could

16    look through landfills or whatever, or shredders.  So

17    what's the relevance about *Herrera* because they should no

18    longer exist, including the documents possessed by Mr.

19    McGill's office, if any.  That's the way I read this.  I've

20    read it to counsel.  I'm giving counsel the opportunity to

21    tell me I was wrong, but I haven't heard that.

22           MR. SMITH:   I would agree with your reading,

23    Your Honor.  I think the Order that we proposed last time

24    is acceptable without the redlining.  I imagine that's what

25    you'll consider sometime after today.  I take it you're

50

Glenn Smith declaration 020

1    taking these things under advisement?

2              THE COURT:   I will take them under advisement

3    and probably rule on them after we complete our vast

4    discovery mission.

5              MR. SMITH:   All right.   Okay.   That's the

6    controversy.   He, Mr. McGill, is redlining in information

7    is that the *Herrera* documents do still exist.

8              THE COURT:   They don't exist.

9              MR. SMITH:   Perfect.

10             THE COURT:   From what I understand, the *Herrera*

11   documents don't exist, based upon the Protective Order and

12   the terms set forth in the Protective Order.   If they do

13   exist, it's contrary to the Protective Order, as far as I

14   can read.   So if *Herrera* isn't a relevant factor, and I'm

15   more than happy to listen to somebody tell me that it is,

16   but if it isn't a factor, what's the relevance of that case

17   at this point in time?

18             MR. McGILL:   Your Honor, just for purposes of

19   the record, the paragraph eight in section four of the

20   Protective Order does talk about a party using its own

21   records, so we--

22             THE COURT:   It says a party, but it doesn't say

23   the attorney.   I realize that Triangle Tube has the right

24   to use their records.   They're their records.   They

25   certainly don't have to destroy the original of their

                                51

1    records.  They're--Those are business records.  They're

2    entitled to keep them, and they're entitled to use them in

3    whichever way they deem appropriate.

4         This Order does not say that Triangle Tube has to

5    destroy its own records, or any other party who was

6    involved in that *Herrera* case has to destroy theirs, but it

7    doesn't say that the attorneys keep those records, in other

8    words, for litigation purposes.  So if Mr. Smith or Mr.

9    Toutant ask for a Triangle Tube record, they can't say, as

10   far as I'm concerned, that it's *Herrera* because *Herrera* is

11   over, and those records have been destroyed.  Triangle

12   Tube, in this case, can use those records.  They're not

13   violating any Protective Order if they do.  But again,

14   they're subject to discovery just like any other relevant

15   information is subject to discovery under the Rules of

16   Discovery.  That's the way I look at this.  And I read that

17   Protective Order on multiple occasions, and I saw nothing

18   that tells me anything differently, assuming--That's why I

19   asked you if the *Herrera* case was still pending, or if

20   we're in the appeal period.  If we were in the appeal

21   period, we'd have a different issue.  We'd have to wait it

22   out.  But none of that seems to be particularly relevant,

23   so I don't know why we're talking about that case.

24        Does that answer the question?

25        MR. SMITH:    Almost.  Ninety-nine percent.  One

52

Glenn Smith declaration 022

1    more point of clarification.  If Mr. Senk, for example,

2    should run into a cache of documents that we have requested

3    and they happen to be stamped "Herrera" at the bottom, I

4    take it because Triangle Tube can still have these records,

5    as we've indicated.  Now if it should be stamped

6    "Triangle"--

7            THE COURT:  Well, they wouldn't be stamped

8    "Herrera" on the bottom because they've been destroyed.

9    They might have a copy of what they provided.

10           MR. SMITH:  Okay.  An original?

11           THE COURT:  Yes.

12           MR. SMITH:  An original.  All right.  Very good.

13   Your ruling's clear, Your Honor.

14           THE COURT:  I don't see how any document would

15   have Herrera stamped on the bottom, because those were to

16   be destroyed.  And if they're not, that's something maybe

17   that should be taken up with the Federal District Court in

18   Wyoming.  Not me.

19           So based upon that, I would expect counsel to be

20   able to submit a Court--an Order.  I'm going to give Mr.

21   McGill time.  I think he's looking at that Protective

22   Order, and I'm going to give him opportunity to do that in

23   case he sees something that I--this Court didn't see,

24   because I don't want this coming up again next week.

25           MR. McGILL:  This is duplicative, Your Honor,

53



USPS TRACKING #

9470 1036 9930 0048 1586 90

**Click-N-Ship®**

UNITED STATES
POSTAL SERVICE®

01/17/2020   9470 1036 9930 0048 1586 90 0255 0000 0058 2001

Mailed from 94710   0625000000310

E

usps.com
$25.50
US POSTAGE
Flat Rate Env

**PRIORITY MAIL EXPRESS 2-DAY™**

Scheduled Delivery Date: 01/21/20

C015

0007

BERNARD R CUZZILLO
BERKELEY RESEARCH COMPANY
600 ADDISON ST
BERKELEY CA 94710-1920

WAIVER OF SIGNATURE

SCHEDULED DELIVERY 3:00 PM

SHIP
TO:
KELLY H RANKIN
UNITED STATES DISTRICT COURT
2120 CAPITOL AVE
STE 2204
CHEYENNE WY 82001-3621